**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division**

LARRY KLAYMAN
7050 W Palmetto Park Road, Unit 15-287
Boca Raton, Florida 33433

                    Plaintiff,

    v.

The Honorable BARACK OBAMA, in his official
capacity as President of the
United States of America
1600 Pennsylvania Avenue
Washington, D.C. 20500

        and

The Honorable THOMAS E. BRANDON
Deputy Director of the U.S. Department of Justice,
Head of the Bureau of Alcohol, Tobacco and Firearms
99 New York Avenue, NE
Washington, DC 20226

        and

The Honorable LORETTA LYNCH in her official
capacity as U.S. Attorney General
U.S. Department of Justice
555 Fourth St. NW
Washington, D.C. 20530

        and

THE UNITED STATES OF AMERICA

                  Defendants.

**COMPLAINT**

Case No. _____

## COMPLAINT

Plaintiff sues the Defendants in this civil action for the abridgement of his fundamental rights under the Second Amendment to the U.S. Constitution.  Plaintiff seeks a Declaratory Judgment, and preliminary and permanent injunctions. Plaintiff also challenges the executive branch action under the Nondelegation Doctrine.

## INTRODUCTION AND SUMMARY

Defendants Barack Obama and Thomas Brandon have announced and initiated actions under the purported inherent authority of the President of the United States to rewrite statutes enacted by Congress by executive order or executive action.  The President states that he is doing so purely because he does not like the legislative decisions of the Congress.

The Defendants' rewriting of laws burdening and abridging the fundamental rights of the Plaintiff and other U.S. citizens under the Second Amendment by the President and his executive branch is unconstitutional, illegal under the Administrative Procedures Act, and *ultra vires* under the applicable laws and the Second Amendment.  These actions are unconstitutional abuses of the President's and executive branch's role in our nation's constitutional architecture and exceed the powers of the President as set forth in the U.S. Constitution.  Even where Congress has granted authority to the executive branch, these particular programs are *ultra vires*, exceeding the bounds of authority delegated by the Congress.

These violations include the Defendants fundamentally transforming the definition of key terms so as to invent a different regime of regulation of firearms through changed interpretations, albeit illegal changes, of current law.  Because the agency entrusted by Congress with enforcement of the legislation has already previously interpreted and applied the relevant legislation differently, it is clearly arbitrary and capricious for the Defendants, each and every

2

one of them, to now suddenly adopt and implement a new and different interpretation for no other reason than the political preferences of temporary occupants of elected office. It is therefore an illegal and invalid exercise of power delegated from the Congress.

Alternatively, Plaintiff challenges these executive branch actions pursuant to 5 U.S.C. §§ 702 through 706 as unlawful and invalid as arbitrary, capricious, an abuse of discretion, unreasonable, and/or otherwise not in accordance with law. Even if the Court might possibly deem the Defendants' new gun control rules constitutional, are exercises of delegated law-making authority by the executive branch which must first go through rigid rule-making procedures under the Administrative Procedures Act ("APA"). The President cannot simply announce sweeping new rules and implement them by giving a speech or issuing an executive memorandum. Finally, even under the APA the substantive content of administrative regulations must conform to the authorizing legislation, particularly where an agency is reversing its prior interpretation and/or enforcement of long-standing legislation.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as involving questions and controversies arising under the U.S. Constitution and the federal laws and regulations arising thereunder.

2. Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants and the federal government are primarily located in the District of Columbia.

## THE PARTIES

3. The Plaintiff Larry Klayman is a natural person who is a Florida citizen, and a former federal prosecutor of the U.S. Department of Justice. He has been in the public eye as a

former public official as a candidate for U.S. Senate, as the founder of Judicial Watch and

Freedom Watch whose mission is to enforce the rule of law and fight against public

corruption, and to further civil rights and equality for all persons under the U.S.

Constitution.   Klayman has been highly visible and active in defending police, other law

enforcement officials, Christians, Jews and Israel and opposing Obama's and Lynch's

efforts to stir up racial, ethnic and religious conflict to suit and further their agendas.

4.  Defendant Obama currently holds the position of and serves as President of the United

States.

5.  Defendant Thomas E. Brandon is a Deputy Director of the U.S. Department of Justice

("USDoJ") with the specific authority, assignment, and responsibility to act as head of

the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") of USDoJ.

Defendant Brandon became the head of ATF effective October 28, 2015.  As the head of

ATF, Mr. Brandon is in charge of the ATF and responsible for a unique law enforcement

agency within the USDoJ that is charged with enforcing firearms and explosives laws and

regulations, as well as regulating alcohol and tobacco. Mr. Brandon has been part of

ATF's senior leadership team since October 2011

6.  Defendant Loretta Lynch holds the position of and serves as the Attorney General of the

United States of America and head of the USDoJ, appointed by the President and

confirmed by the Senate.  Defendant Obama publicly explained, repeatedly, that he

worked extensively with Loretta Lynch to develop, design, and structure the new gun

control initiative at issue herein, and that Lynch will be an integral part of implementing

the new initiative.[1]  Defendant Lynch:  "added that the ATF is ramping up its enforcement efforts, particularly online."  *Id.*

7.  The Defendant United States of America is sued pursuant to 5 U.S.C. § 703 ("[T]he action for judicial review may be brought against the United States.").

## FACTS COMMON TO ALL COUNTS

### A.      The Plaintiff at Legal Risk from Defendants Re-Interpretation of Law

8.  Plaintiff Klayman is the owner of guns for his protection, include two 9 millimeter handguns and one .45 caliber  in part as a prized collector's item as well as in self defense, all properly licensed and permitted.  He also holds a Florida concealed weapons permit.   As a lawyer, Klayman has sued terrorist organizations and countries for supporting terrorism.  Especially while litigating against the Clintons, he has been actually threatened with death threats, even having a man appear suddenly inside his house.  He therefore needs the protections of the Second Amendment.

9.  The Plaintiff Klayman intends to exercise his Second Amendment rights including the right to keep and bear arms, own, and carry firearms, and buy and sell guns as permitted by current law.  He intends to do what is lawful under current law to lawfully buy, sell, trade, or gift these guns or additional guns like any other American considered about safety.  However, these new rules will most definitely "infringe"

---

[1]      Stephanie Condon, "Obama moves to close gun show loophole for background checks," CBS News, January 4, 2016, accessible at: http://www.cbsnews.com/news/obama-moves-to-close-gun-show-loophole-for-background-checks/  ("Lynch said, to help gun dealers, hobbyists and collectors understand the new guidance. This effort will target gun shows, flea markets and online dealers. Lynch added, "*We will be looking for those individuals who seek to avoid registering.*"")

upon the right to keep and bear arms that the Second Amendment says cannot be infringed.

10. Now, the Plaintiff is at legal risk because his intended conduct is legal under current law but would become prohibited under the Defendants' re-interpretation of the law, subjecting the Plaintiff to legal action by the Defendants. Given the prominence of the Plaintiff in challenging the status quo in government and in particular the Obama administration, such legal action is likely by these Defendants.

11. Therefore, the Plaintiff is entitled to sue for declaratory judgment to avoid legal jeopardy from undertaking actions that are legally permitted if the Defendants' new gun control rules are invalid but which might well subject him to legal jeopardy if those rules are legally valid.  Under well-settled law, one does not need to commit acts incurring legal jeopardy before testing the validity of those legal rules.

12. Bringing a legal challenge in the face of legal risk to a plaintiff under new laws or regulations or (as here) guidance or interpretation of the law is a major, well-recognized, and important category of some of the most important judicial decisions in our country's history.

**B.**      **Background and Context:**

13. The Second Amendment governs the U.S. Government as follows:

> A well regulated Militia, being necessary to the security
> of a free State, the right of the people to keep and bear
> Arms, shall not be infringed.

14. Whereas some amendments in the U.S. Constitution explicitly grant the authority of Congress to pass appropriate legislation to implement that amendment, *the Second*

*Amendment conspicuously does not* grant such authority to Congress. The contrast in structure is significant in textual interpretation.

15. Moreover, "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Article I, Section 1, of the U.S. Constitution.

16. There is nothing in the U.S. Constitution which offers any authority or role of the executive branch with regard to legislating to change the rights under the Second Amendment.

17. The Second Amendment is a prohibition on any action of government, not a power conveyed. Therefore, the "necessary and proper clause" – which is keyed to powers granted – does not apply here.

18. However, the President has a duty that he "shall take Care that the Laws be faithfully executed…." Article II, Section 3, of the U.S. Constitution.

19. The Defendants are not filling in an inadvertent gap or a mistake, but directly over-ruling the well-considered legislative decisions of Congress to enact or not enact legislation. Congress has fully evaluated, considered and debated the issues since the Civil War.

20. For decades the Congress has been faced with pressure and lobbying to restrict the rights under the Second Amendment for U.S. citizens to buy and sell, own, and carry guns.

21. It is a documented historical fact that gun control and restrictions on the rights of Americans began as ways to keep guns out of the hands of blacks and hispanics, especially former slaves after the Civil War.[2]

22. Yet Congress has steadfastly refused to enact the agenda of gun control advocates even when faced with decades of high-profile public discussion, activism, lobbying and pressure.

23. Therefore, Congress is extremely well-informed and engaged in the topic, having debated and listened to all points of view on all aspects of this issue as a major national conversation for decades.  This is not an obscure question escaping the attention of Congress.

24. Now, the Defendants are admittedly, expressly, explicitly, and openly changing the laws enacted by Congress because Congress and President Obama do not agree.

25. The Defendants knowingly and explicitly claim the right and power to rewrite statutes enacted by Congress because "Congress has failed to act" (variously phrased).

26. The Defendants' initiative here are expressly based on claiming the authority to rewrite laws whenever Congress "fails" to agree with President Obama.

**C.     Obama Administration's Executive Action Gun Control Programs**

27. On January 4 and 5, 2016, the White House ("Executive Office of the President") announced President Obama's series of orders and actions as an initiative which Obama titled "**New Executive Actions to Reduce Gun Violence and Make Our**

---

[2]     Clayton E. Cramer, "The Racist Roots of Gun Control," Kansas Journal of Law & Public Policy, Winter 1995, at 17 ("Throughout much of American history, governments openly stated that gun control laws were useful for keeping blacks and Hispanics 'in their place' and for quieting the racial fears of whites. Racist arms laws predate the establishment of the United States. This is not surprising. Blacks in the New World were often slaves, and revolts against slave owners often degenerated into less selective forms of racial warfare.")

**Communities Safer**" [3]   (hereinafter "new gun control rules" or Defendants' "initiative"). [4]

28. These new rules took effect immediately on January 5, 2016.[5]

29. However, the Defendants have not yet released orders or memorandum for the new rules, despite emphatic public statements about these new rules. [6]

30. As a result, the Plaintiff will seek in discovery to obtain the internal orders that the Defendants admit to have issued but have apparently not publicly released.

31. The Defendants seek to label these new rules as mere "guidance." However, these new rules will have the force of law, even to the point of criminal prosecution of felonies for those who violate the supposed 'guidance' with up to five years in prison and fines of $250,000 for each occurrence.

32. Therefore, the new rules are in fact regulations and not guidance. The federal courts have rejected the idea that an agency can escape judicial review under Section 704 of the APA by labeling a rule as 'guidance.' *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir. 1986); *see also Continental Airlines, Inc. v. CAB,* 173 U.S. App. D.C. 1, 522 F.2d 107, 124 (D.C. Cir. 1974) ("The label an agency attaches to its

---

[3]      Office of the Press Secretary, The White House FACT SHEET: New Executive Actions to Reduce Gun Violence and Make Our Communities Safer, January 4, 2016, accessible at: https://www.whitehouse.gov/the-press-office/2016/01/04/fact-sheet-new-executive-actions-reduce-gun-violence-and-make-our

[4]      No concise label or catch phrase has been offered to refer to these initiatives.

[5]      Press Briefing, Press Secretary to President Obama Josh Earnest, January 5, 2016, accessible at:  https://www.whitehouse.gov/the-press-office/2016/01/05/press-briefing-press-secretary-josh-earnest-152016  ("MR. EARNEST:  Well, certainly the guidance will begin to be implemented today.  And that is one of the benefits of the President's proposal, that these are actions that can be -- that aren't subjected to a protracted rule-making process but rather changes that can go into effect and begin being implemented today.")

[6]      *Id. (*"MR. EARNEST:  I'm not sure what sort of administrative paperwork is required to implement the policy that the President discussed today, but we can certainly consult with Counsel's Office here and get back to you with an answer on that.")

action is not determinative."). *Nicholas v. INS*, 590 F.2d 802, 807-08 (9th Cir. 1979), held that the Immigration and Naturalization Service's [7] 1978 'instructions' were a substantive rule requiring rule-making formalities under the APA.

33.     As has been typical of such initiatives by a president, the new gun control rules include a mixed bag of various actions.  Here, a few of the proposed actions – those *not* challenged here – are the President ordering the executive branch or asking state governments to do a better job administratively.  But the Plaintiff sues here only about those actions which are unconstitutional and/or illegal, and clearly distinguishes different categories of actions.

34.  Under current law, the Gun Control Act of 1968 (as amended), Title 18, Chapter 44, § 922, it is unlawful "in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

35.  Thus, any person or business must be a so-called federally licensed firearms dealer  to buy or sell a gun or to transport it.

36.  In addition, becoming a federally-licensed firearms dealer triggers the obligation to conduct a background check on those who wish to buy a gun from them – that is, more specifically, the dealer must collect the information required for the government to investigate the would-be purchaser and submit that information for government scrutiny of the purchaser.

37.  The Brady Handgun Violence Prevention Act of 1993 (Brady Act) requires federally licensed firearms dealers to perform background checks on prospective firearms

---

[7]     INS is now the U.S. Citizenship and Immigration Services (USCIS) and Immigration and Customs Enforcement (ICE).

purchasers to ensure that a firearm transfer would not violate federal, state or local law.

38. Under current law, ATF Form 4473 is required only for sales or dispositions by a licensed manufacturer, importer, or dealer. 18 U.S.C. 923(g); 27 CFR 478.124.

39. Despite an individual person having the constitutional right to keep and bear arms without that right being infringed, *District of Columbia v. Heller*, 554 U.S. 570 (2008), under current laws and regulations, 27 C.F.R. §478.32, implementing Title I, State Firearms Control Assistance (18 U.S.C. Chapter 44), of the Gun Control Act of 1968 (82 Stat. 1213) as amended by Pub. L. 99-308 (100 Stat. 449), Pub. L. 99-360 (100 Stat. 766), Pub. L. 99-408 (100 Stat. 920), Pub. L. 103-159 (107 Stat. 1536), Pub. L. 103-322 (108 Stat. 1796), Pub. L. 104-208 (110 Stat. 3009), and Pub. L. 105-277 (112 Stat. 2681), a person who has been formally adjudicated by a competent court to be

    a) guilty of having committed a felony,

    b) guilty of a crime of domestic violence, whether misdemeanor or felony,

    c) ordered to comply with a "protective order" that meets certain precise criteria including explicitly forbidding any act of violence and determining that the person under the protective order has threatened or intimidated the victim,

    d) "a mental defective or has been committed to a mental institution,"

    e) a fugitive from justice, apparently meaning that criminal prosecution is pending or a sentence on conviction has been ordered or sentencing is pending,

    f) under indictment awaiting trial for a felony

is prohibited from buying a gun and a dealer is prohibited from selling to such a person.  Thus, a background check is intended to detect any of these conditions and to result in blocking the sale of firearms to any person found by a background check to be barred for these reasons.

40. Reports from the judicial branch as to who has been convicted of a felony or adjudicated mentally incompetent, etc.,  are entered into the National Instant Criminal Background Check System (known as "NICS" [8] ).  The NICS is managed by the Federal Bureau of Investigations (FBI).  A licensed dealer in firearms must submit Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Form 4473 for processing by the FBI, to determine the results. 28 C.F.R. 25.  This process is being increasingly computerized over time, partially and slowly.

41. Primarily, the background check required for a sale of a firearm checks whether a would-be purchaser has been convicted by a court of law of a felony or adjudicated by a court of law as mentally incompetent.

42. Under current law, no person is denied the right to keep or bear arms or to buy, sell, own, or carry, a firearm without "due process of law" of that liberty interest in violation of the Fifth Amendment to the U.S. Constitution by judicial adjudication in a court of law.

43. The system under current law requiring a background check allows ATF up to three days to conduct a background check, so current law in effect also imposes a three day delay from the time a person chooses to buy a gun until the time they can complete the transaction, unless the ATF clears the buyer sooner.

44. Despite popular discussion, no "gun show loophole" actually exists.

---

[8]      *Sic.*

45. Exhibitors at gun shows who are in the business of buying or selling guns must comply with the same requirements for dealer licensing and requiring background checks as any other dealer, including exhibitors at gun shows who are dealers, dealers selling through the mails, or dealers selling over the internet.

46. A violation of these requirements is a felony punishable by up to five years and fines up to $250,000.

### D.     Structure of Combined Laws Imposes Background Check Requirement

47. As a result, the combination of current laws imposes the obligation on any dealer to (a) obtain a dealer license, (b) conduct background checks and (c) refuse to sell to would-be purchasers who do not pass a background check only upon persons or businesses who meet the legal definition and test.

48. Specifically, one qualifies as a "dealer" under 18 U.S.C. § 921 (a)(11) as follows:

> (11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

49. Furthermore, under 18 U.S.C. § 921 (a)(21) requires that –

> (21) The term "engaged in the business" means—
>            ***
> (D) as applied to a dealer in firearms, as defined in section 921(a)(11)(B), a person who devotes time, attention, and labor to engaging in such activity *as a regular course of trade or business with the principal objective of livelihood and profit*, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms;

(Emphasis added.)

50. Moreover, 18 U.S.C. § 921 (a)(22) requires that –

> (22) The term "with the principal objective of livelihood and profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

51. As a result, ***Congress*** has knowingly and intentionally exempted individuals who buy or sell an occasional gun when they are not earning a livelihood or profit from buying or selling firearms.  Only those who are in the business of (seeking to earn a livelihood from) a trade in firearms are covered by these various requirements (regardless of whether they do business at a gun show or a physical shop or by direct mail, there being no "gun show exemption" contrary to public discussion.)

52. So the demarcation created by Congress is whether a person is in the business of trading in firearms or is a private individual such as a hobbyist or collector.

**E.      Defendants Now Illegally Change the Law by Fiat**

53. Now, however, on January 4 and 5, 2016, the Defendants ordered ATF officials and staff to change the enforcement of the laws to a new and different interpretation of the statutes.

54. Specifically, the Defendants ordered the ATF to apply a new and different interpretation of ***who is a "dealer"*** for the purposes of these statutes.

55. On January 4, 2016, the Defendants ordered the ATF in its enforcement of the laws entrusted to that agency for enforcement to treat almost anyone as a dealer, regardless of whether or not the person is in the business of trading in firearms or earning a livelihood (or seeking to) by trading in firearms.

14

56. Now, going forward, any person who buys or sells even one or two guns, even as a private individual (that is, not operating any recognizable business trading in firearms), as a hobbyist or antique collector will be treated as a "dealer" for the purposes of requiring a dealer's license, requiring them to perform (collect and submit the necessary information for) a background check, and prohibiting them from selling to persons who do not undergo and pass a background check (or if the ATF does not respond on the background check before the expiration of the 3 day response period).

57. This change in interpretation is directly contrary to the intent of Congress, clearly expressed by the legislation in its text, overall structure, and overall design.

58. This change in interpretation is arbitrary and capricious and illegal and *ultra vires* because it is a complete reversal of the previous interpretation by the agency charged with implementing the legislation.

59. There are no facts or circumstances to support a change in the agency's interpretation of the statutes other than the personal politics of President Obama.

60. Thus, the legality of the new January 4, 2016, interpretation must be measured against decades of contrary interpretation by the enforcing agency, not against a blank slate.

61. Defendants are breaking the law and violating the U.S. Constitution by systematically, intentionally, and knowingly rewriting the laws passed by Congress.

62. Under the new January 4, 2016, re-interpretation of the statutes, a person who is not in the business of trading in firearms could be convicted "for only one or two transactions."

**F.**     **Expansion of Mental Health Prohibition on Buying Firearms**

63. Furthermore, of far more egregious constitutional damage,[9] on January 4, 2016, the Defendants ordered the ATF, Social Security Administration, and other agencies to change their enforcement, implementation and interpretation of these statutes to strip the Plaintiff and other U.S. citizens of their rights of due process.

64. Under current law, a person may lose his or her Second Amendment rights only upon the formal adjudication by a court of law that the person is either (a) guilty of a felony after a full criminal prosecution or (b) mentally incompetent pursuant to 18 U.S.C. § 922(g)(4).

65. Now, however, under the Defendants' new January 4, 2016, initiatives, the Defendants have ordered ATF officials and personnel, and those of other agencies, to load into the NISC background check database persons who have mental health "issues" *but who have **not** been formally adjudicated as mentally incompetent by a court of law.*

66. The Defendants have ordered the Social Security Administration to report all persons receiving disability payments to be included in the NISC database.

67. The Defendants now encourage all medical professionals to report their patients who exhibit any poorly-defined mental health "issues" and are working to change the professional rules within those professions to both endorse and require such reports.

68. Under the Defendants' new January 4, 2016, initiative, persons including the Plaintiff can lose their rights under the Second Amendment without the due process of law for

---

[9]     But easier to understand after presenting the other matters first.

that liberty interest under the Fifth Amendment, merely by the subjective opinion of someone that they have a mental health issue.

69. However, even now those who disagree with the Defendants are being labeled as mentally ill for disagreeing with politically-correct opinions.

70. Indeed, some activists argue that owning a gun is a sign of mental illness.

71. Sadly, as we consider the long-term political durability of our nation even long after the current President has left office, it is an undeniable matter of historical fact that dissidents from the political opinions of the government have been suppressed by falsely labeling those dissidents as having mental health issues, famously on a massive scale in the Soviet Union and the Nazi Third Reich.

72. The prohibition on a person with a mental health "issue" from buying or owning a gun is a dramatic change from the laws enacted by Congress, illegal, invalid, and *ultra vires.*

73. The new standards for who has a mental health "issue" are poorly-defined and void for vagueness.

74. As the Defendants admit, the new rules are not readily understandable:

> **What activities require a dealer's license?**
>
> Federal law does not establish a "bright-line" rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement.  Instead, determining whether you are "engaged in

the business" of dealing in firearms requires looking at the specific facts and circumstances of your activities. [10]

And:

It is important to note that no single factor is determinative, and that the relative importance of any of the factors will vary depending on the facts and circumstances applicable to the individual seller.[11]

75. As the Defendants also admit, the new rules are not readily understandable:

The ATF will engage in a "business educational initiative" in the first part of 2016, Lynch said, to help gun dealers, hobbyists and collectors understand the new guidance. This effort will target gun shows, flea markets and online dealers. [12]

And:

To improve enforcement, the FBI aims to start processing background checks 24 hours a day, seven days a week. It also aims to improve its notification to local authorities when someone unlawfully attempts to buy a gun.

For instance, Lynch explained, if an individual sells a gun clearly for profit, or if they buy and sell a gun kept in its original packaging, they may be considered a dealer. [13]

### G.     <u>Defendants Illegally Legislate in Authorization and Appropriation</u>

76. Furthermore, the Defendants also seek to research gun technology to change how guns work, to prevent "unauthorized use."

77. This new technology could enable the government, perhaps under a future president, to remotely disable all firearms owned by the people.  An ability to prevent "unauthorized use" (which would require a computer chip inside the firearm) could

---

[10]     The New ATF Guidance issued on January 4, 2016:  ATF Publication 5310.2 (January 2016), "DO I NEED A LICENSE TO BUY AND SELL FIREARMS? Guidance to help you understand when a Federal Firearms License is required under federal law," U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, page 4, accessible at:. https://www.atf.gov/file/100871/download

[11]     *Id.*

[12]     Stephanie Condon, "Obama moves to close gun show loophole for background checks"

[13]     *Id.*

allow a tyrannical government to remotely turn off all the firearms in the country so equipped.

78. However, President Obama's Presidential Memorandum "Promoting Smart Gun Technology" violates the constitution by performing the Congressional legislative rules of authorizing expenditures and appropriating funds.

79. Defendant Obama's Presidential Memorandum purports to legislate, authorize, and appropriate federal funds from the treasury to be used for a particular purpose to conduct research and development into changing the design and technology of guns.

80.  A president does not have the constitutional authority to appropriate funds or authorize the expenditure of funds, which are the role of Congress.

81. Congress has specifically regulated, by statute, how the budget and appropriations process must work, including under the Budget Control Act of 1974.

## **CAUSES OF ACTION**

82. For each of the Causes of Action set forth below, Plaintiff incorporates by reference, repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth in each of the Causes of Action stated below.

83. For each of the Causes of Action asking for Declaratory Judgment set forth below, the Plaintiff  relies upon 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and further asserts that under 28 U.S.C. § 2201, Declaratory Judgment under Federal law is available "whether or not further relief is or could be sought," and "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."   Moreover, Plaintiff asks the Court to declare the rights and other legal relations any interested parties.

84. For each of the Causes of Action asking for Declaratory Judgment set forth below, the controversy is within the jurisdiction of this Court under the U.S. Constitution.

## FIRST CAUSE OF ACTION
### *Declaratory Judgment Obama's Ultra Vires Under the U.S. Constitution*

85. Plaintiff respectfully asks the Court to enter Declaratory Judgment that Defendants' new gun control rules initiative are unconstitutional as violating the role of the President of the United States and exceeding the President's constitutional authority under the U.S. Constitution.

86. There is an actual controversy as to whether the Defendants may infringe the rights of the Plaintiff provided under the Second Amendment.

87. Defendant Obama and the other Defendants have no authority under the U.S. Constitution to change the statutes enacted by Congress on firearms.

88. The President is obligated to enforce the laws as written:

> Article II - The Executive Branch
>        * * *
> Section 3 - State of the Union, Convening Congress
> He shall … take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States.

89. The Supreme Court undertook a fundamental analysis of the constitutional architecture of the U.S. Constitution in *INS v. Chadha*, 462 U.S. 919 (1983).

90. Where a provision in legislation would normally be routinely accepted, the Supreme Court found in *Chadha* that the legislative veto of executive branch action violated the U.S. Constitution because it did violence to the constitutional architecture and structure.

91. The U.S. Constitution's structure is for Congress to legislate and the executive branch to implement.  The legislative veto violated that structure.

92. Here, the new gun control rules present the mirror image of *Chadha*.

93. Here it is Defendant Obama seeking to legislate in place of Congress, violating the constitutional structure and architecture.

### SECOND CAUSE OF ACTION
*Violation of Rule-Making Requirements Under the Administrative Procedures Act*
*Violation of the APA, 5 U.S.C. § 553*

94. The Plaintiff also sues the Defendants because their actions violate the requirements of the APA.

95. The APA requires this Court to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

96. ATF is an "agency" under the APA. 5 U.S.C. § 551(1).

97. Each of the various orders issued within the various aspects of the new gun control rules is a "rule" within the meaning of the APA. 5 U.S.C. § 551(4).

98. With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking. 5 U.S.C. § 553.

99. The Defendants announced the new gun control rules without authority and without notice-and-comment rulemaking.

100.   A Federal Department or agency has no legislative or regulatory authority, except to the extent delegated to it by Congress explicitly or implicitly (e.g., to fill in gaps in the law).

101.   The exercise by a Federal Department or agency of Congress' delegated authority must strictly comply with the procedures, requirements, and limitations established by Congress by the Administrative Procedures Act.

102.    Procedurally, a Department or other agency cannot promulgate a rule without notice-and-comment rulemaking.  Although referred to as 'informal' rule-making, this elaborate procedure requires the agency to publish a notice of proposed rulemaking in the *Federal Register* and to accept and consider public comments on its proposal. *See* 5 U.S.C. § 553.

103.    The agency must draft a final version of the regulation after considering and analyzing the public comments.

104.    A failure to genuinely analyze, consider, and evaluate the public comments before drafting the final version of the regulation may violate the APA.

105.    Here, the various programs ordered by the Defendants are "legislative rules" to which the APA's notice-and-comment rule-making procedures and requirements apply, and changes must comply with the APA's extensive process.[14]

106.    The Defendants' new gun control rules are legislative rules that must comply with the APA's procedural and substantive requirements. For example, in *Nicholas v. INS*, 590 F.2d 802, 807-08 (9th Cir. 1979), the Supreme Court held that Immigration and Naturalization Service's 1978 "instructions" constituted a substantive rule requiring rule-making formalities under the Administrative Procedures Act.

107.    First, the Secretary's orders from the Memoranda "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979)

108.    For example, in *Morton v. Ruiz*, 415 U.S. 199, 232 (1974), the Supreme Court held that the Bureau of Indian Affairs could not create "eligibility requirements" for

---

[14]    Despite the rigorous requirements and elaborate process involved, this is known as "informal rule-making" within government, partly because in-person hearings used originally were replaced long ago with submissions in paper.

allocating funds among Native Americans without complying with the APA requirements to establish the criteria as regulations. *Id.* at 230 - 236.

109.   Here, like the BIA, the ATF created eligibility criteria in a similar fashion.  ATF's criteria determine the right of millions of people keep and bear arms.

110.   Second, the new gun control rules are legislative rules because they are binding on ATF officials. A rule is substantive (and hence must comply with the APA) "if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *General Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted).

111.   An agency directive must comply with the APA, when, for example, "[F]rom beginning to end [it] reads like a ukase. It commands, it requires, it orders, it dictates." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000).

112.   "Guidance" document constitutes final agency action reviewable under Section 704 insofar as it restrains administrative staff 's discretion.  *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755-56 (5th Cir. 2011) ; *NRDC v. EPA*, 643 F.3d 311, 319-20 (D.C. Cir. 2011).

113.   The Defendants January 4, 2016, "guidance" document is subjected to judicial review because it used "mandatory words like 'will' instead of permissive words like 'may' " to describe how the agency's staff would process refund claims.  *Cohen v. United States*, 578 F.3d 1, 7 (D.C. Cir. 2009).

114.   That the issuance of a guideline or guidance may constitute final agency action has been settled in this Circuit for many years.  *Barrick Goldstrike Mines Inc. v.Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000)

115.    The Court rejected the proposition that an agency can escape judicial review under Section 704 by labeling its rule an "informal" guidance document   *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir. 1986)).

116.    The primary distinction between a substantive rule and a general statement of policy . . . turns on whether an agency intends to bind itself to a particular legal position.  *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997); *American Bus Ass'n v. United States*, 627 F.2d 525, 532 (D.C. Cir. 1980).

117.    Third, the new gun control rules are legislative rules because each order "puts a stamp of agency approval or disapproval on a given type of behavior," as analyzed by *Chamber of Commerce v. DOL*, 174 F.3d 206, 212 (D.C. Cir. 1999).

118.    In *Chamber of Commerce*, this Circuit's Court of Appeals held that the Labor Department promulgated a substantive rule when it told employers that they could avoid 70-90% of workplace inspections if they participated in a new "Cooperative Compliance Program." *Id.* at 208.

119.    In other words, there, the Labor Department sought to prioritize enforcement and prosecution activities in a manner similar to the Department of Homeland Security's executive action programs in the case at bar. There, Labor established criteria to designate lower-risk employers who meet those criteria, in order to allocate enforcement resources.  Those participating in the program and meeting the criteria received a designated status that resulted, in almost all cases, in immunity from enforcement or prosecutorial action.

120.    As a result, the Defendants must comply with the rule-making procedures imposed by the Administrative Procedures Act (APA), including posting a precise

Notice of Proposed Rule-Making (NPRM) in the Federal Register and receiving,

reviewing, and analyzing public comments before finalizing any regulation.

### THIRD CAUSE OF ACTION
*The Executive Action Rules Violate Administrative Procedures Act*
*As Ultra Vires, By Exceeding, Conflicting With Congressional Statutes*
*Violation of the APA, 5 U.S.C. § 706*

121.     Plaintiff challenges Defendant Obama and the other Defendant's new gun control

rules as illegal, unconstitutional, and invalid agency action pursuant to 5 U.S.C. §§

702 through 5 U.S.C. §§ 706.

122.     Pursuant to 5 U.S.C. § 706(2), the APA requires this Court to hold unlawful and

set aside any agency action that is

> "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in
> accordance with law; (B) contrary to constitutional right, power,
> privilege, or immunity; [or] (C) in excess of statutory jurisdiction,
> authority, or limitations, or short of statutory right."

123.     Concerning the substance of agency action, an agency cannot promulgate a rule

that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law."  Specifically, an agency's rule cannot conflict with what Congress has said

in Congressional enactments.  *Id.* § 706(2)(A).

124.     Defendant's orders to the ATF are not "in accordance with" the laws enacted by

Congress. 5 U.S.C. § 706(2)(a).

125.     Defendants' orders take away legal rights for millions of would-be gun owners.

And it does so by rewriting the laws and contradicting the priorities adopted by

Congress.

126.     The APA prohibits the agency from authorizing what Congress has prohibited or

*vice versa.  See, e.g.*, *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984)

("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

127.    The policies previous Congresses embraced in the past. to foreclose the agency from adopting the policy that Congress rejected. *See, e.g.*, *Hearth, Patio & Barbecue Ass'n v. U.S. Dept. of Energy*, 706 F.3d 499, 504-07 (D.C. Cir. 2013).

128.    Plaintiff is aggrieved by the invalid, illegal, and unconstitutional agency actions as set forth above.

129.    The initiatives of Defendant Obama and the other Defendants violate the requirements of the APA because the reversal of the executive branch's positions in conflict with existing regulations and law is necessarily arbitrary, capricious, arbitrary, an abuse of discretion, unreasonable, and otherwise not in accordance with law.

130.    That is, if the previously promulgated regulations were well grounded in law and fact, then a dramatic departure from those regulations most likely cannot also be well grounded in law and fact

131.    As such, the Defendants' orders to the ATF violate the aforementioned provisions in the APA and 5 U.S.C. § 706, *et seq.,* and they are therefore unlawful and invalid.

**FOURTH CAUSE OF ACTION**
***Declaratory Judgment: Void for Vagueness***

132.    Plaintiff respectfully asks the Court to enter Declaratory Judgment that the new gun control rules are unconstitutional as void for vagueness.

133.    The Defendants have explicitly announced that whether or not a private individual will be found to be a dealer – such that a license is required for any transactions involving firearms and background checks must be conducted for any sale – will now

be a subjective, case-by-case determination with no clear test for whether an individual will be found to be a dealer or not.

134.    Similarly, a person with a mental health "issue" will now be committing a felony punishable by five years in jail and a $250,000 fine for each occurrence, as will any person selling to them, although it is hard to imagine a more vague, subjective, or ill-defined test.  In contrast, adjudication by a court of mental incompetence follows a precise body of law, which has been abandoned in the Defendants' new initiatives.

135.    To sell one of his own firearms, the Plaintiff will face the risk of prosecution for making a private sale to someone who may have a poorly-defined mental health "issue" – who definition will change with the headlines and outcry by politicians before the news cameras – but who has not been formally adjudicated mentally defective as a firearms purchaser.

136.    There is an actual controversy as to whether the Defendants may infringe the rights of the Plaintiff provided under the Second Amendment by asserting rules with criminal penalties of felonies punishable by up to five years in prison and $250,000, without setting forth rules that would allow a reasonable person to know if they are violating the law or not.

### FIFTH CAUSE OF ACTION
***Declaratory Judgment: Denying Second Amendment Rights Without Due Process of Law***

137.    Plaintiff respectfully asks the Court to enter Declaratory Judgment that the Defendants may not restrict the rights to Americans to keep and bear arms based upon vaguely-defined mental health "issues" rather than a judicial adjudication with full due process of mental incompetency.

138.    There is an actual controversy as to whether the Defendants may infringe the

rights of the Plaintiff provided under the Second Amendment without due process.

139.    Defendant Obama and the other Defendants have no authority under the U.S.

Constitution to change the statutes enacted by Congress on firearms so as to take

away the due process rights of adjudication in court.

### SIXTH CAUSE OF ACTION
*Declaratory Judgment:  Violation of Non-Delegation Doctrine*

140.    Plaintiff respectfully asks the Court to enter Declaratory Judgment that the

Defendants' attempted exercise of delegated authority is unlawful as being in

violation of the non-delegation doctrine.

141.    The exercise of the executive branch's discretionary decision-making authority in

creating the new gun control rules violates the nondelegation doctrine as set forth in

*American Trucking Associations, Inc. v. United States Environmental Protection*

*Agency*, 175 F.3d 1027 (D.C. Cir. 1999), *modified on reh'g by* 195 F.3d 4 (D.C. Cir.

1999), *modified by Michigan v. United States EPA*, 213 F.3d 663 (D.C. Cir. 2000)

(limiting the scope of *American Trucking*, stating "[w]here the scope increases to

immense proportions … the standards must be correspondingly more precise")

(citations omitted) *cert. granted sub nom. American Trucking Ass'ns, Inc. v. Browner*,

120 S. Ct. 2193 (2000).

> "The United States Constitution grants the legislative power
> exclusively to Congress, not to the President, courts, or
> governmental agencies.  Nonetheless, the Supreme Court has long
> recognized that Congress may delegate legislative power to
> governmental agencies, provided that the legislative act limits the
> delegated power and provides a standard to guide the agency's
> actions.  Thus, agencies are not creating law, they are executing the

law within specific parameters in accordance with legislative
intent."

142.    However, an exercise of agency discretion within the statute must be based upon

an "intelligible principle" grounded in the Congressional enactment, not merely the

preference of the agency.

143.    The sweeping power claimed by Defendant Obama and the other Defendants is an

unlimited, unbridled power without the guidance of any intelligible principle guiding

the exercise of the delegated power.

## SEVENTH CAUSE OF ACTION
### *Violation of President's Duty to Take Care that Laws are Executed*

144.    The U.S. Constitution, defining the office and duties of the President of the

United States, requires of the President that "he shall take Care that the Laws be

faithfully executed." Article II, Section 3, U.S. Constitution.

145.    The Defendants' orders to the ATF officials and personnel violate the President's

constitutional duty to "take Care that the Laws be faithfully executed." U.S. CONST.

art. II, § 3, cl. 5.

146.    The Take Care Clause is judicially enforceable against presidential invocations of

the dispensing power. See, e.g., Kendall v. United States, 37 U.S. (12 Pet.) 524, 612-

13 (1838); Angelus Milling Co. v. Comm'r of Internal Revenue, 325 U.S. 293, 296

(1945).

147.    For example, in *Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1838), the Court

affirmed mandamus to a cabinet official ordering him to settle claims with mail

contractors as required by an act of Congress. The cabinet official argued that he

could ignore the act because the President had an exclusive duty to execute the laws,

*id.* at 545-47, 612, but the Court disagreed:

> To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the [C]onstitution and entirely inadmissible.

*Id.* at 613; *see also Medellin v. Texas*, 552 U.S. 491, 525 (2008) (President has "an array" of discretionary obligations to enforce international law, "but unilaterally converting a non-self-executing treaty into a self-executing one is not among them"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter."); *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945) ("[E]xplicit statutory requirements . . . must be observed and are beyond the dispensing power of Treasury officials.").

148.    As the Supreme Court has held that Article II does not "vest[ ] in the President a dispensing power, which has no countenance for its support in any part of the constitution; and . . . would be clothing the President with a power entirely to control the legislation of congress, and paralyze the administration of justice." *Kendall*, 37 U.S. (12 Pet.) at 613; *see also Youngstown*, 343 U.S. at 587 ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker.").

149.    The Defendants orders to the ATF violate the President's constitutional duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3, cl. 5.

150.    The U.S. Supreme Court has made clear that the Take Care Clause is judicially enforceable against presidential invocations of the dispensing power. *See, e.g.*, *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 612-13 (1838); *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945).

151.    The Take Care Clause limits the President's power and ensures that he will

faithfully execute Congress's laws — not rewrite them under the guise of executive

"discretion."

152.    Therefore, the Defendants' actions violate the Take Care Clause.

## **PRAYER FOR RELIEF**

With regard to all counts, Plaintiff Klayman respectfully demands that the Court with

regard to each and every Defendant: (1) Enter a preliminary injunction to halt implementation

until the Court can hear all parties and enter a decision on a preliminary injunction; and (2) Enter

a permanent injunction declaring the new gun control programs ordered on January 4, 2016, to

be unlawful and unconstitutional , as well award such other forms of equitable relief as may be

appropriate, attorneys' fees and costs, and such other relief the Court may deem just and proper.


Dated: January 18, 2016                          Respectfully submitted,

                                                 _/s/ Larry Klayman_____
                                                 Larry Klayman, Esq.
                                                 FL Bar No. 246220
                                                 7050 W Palmetto Park Road, Unit 15-287
                                                 Boca Raton, Florida 33433
                                                 Telephone:  (310) 595-0800
                                                 E-mail:  leklayman@gmail.com