## I IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Palm Beach Division

LARRY KLAYMAN

                Plaintiff,

    v.

The Honorable BARACK OBAMA
President of the United States

       and

The Honorable THOMAS E. BRANDON
Deputy Director of the U.S. Department of Justice,
Head of the Bureau of Alcohol, Tobacco and Firearms

       and                      Case No. 9:16-cv-80087-DMM

The Honorable LORETTA LYNCH
U.S. Attorney General

       and

THE UNITED STATES OF AMERICA

                Defendants.

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56 and the Rules of the U.S. District Court for the Southern District of Florida ("Local Rules") 7.5 and 56.1, Plaintiff respectfully moves the Court to enter summary judgment in his favor.

Defendants Barack Obama and, acting on Obama's executive orders and actions, Thomas Brandon has then announced and initiated actions under the purported inherent authority of the President to rewrite and abrogate statutes enacted by Congress. The President states that he is doing so purely because he does not like the legislative decisions of the Congress.

The Defendants' rewriting of laws burdening and abridging the fundamental rights of the Plaintiff and other U.S. citizens under the Second Amendment by the president and his executive branch is unconstitutional, illegal under the Administrative Procedures Act, and *ultra vires* under the applicable laws and the Second Amendment.  These actions are unconstitutional abuses of the President's and executive branch's role in our nation's constitutional architecture and exceed the powers of the President as set forth in the U.S. Constitution.  Even where Congress has granted authority to the executive branch, these particular programs are *ultra vires*, exceeding the bounds of authority delegated by the Congress.

Although an agency entrusted by Congress with enforcement of legislation has implied power to fill up the gaps and apply agency expertise to shape the implementation of the governing statute, the Defendants erroneously imagine that this gives the President discretion to change the law based on his policy preferences.  On the contrary, the administrative agency role in implementing a statute is a sober responsibility to faithfully interpret and implement the intent of Congress.  The Defendants are fundamentally in error in seeing an open invitation to modify the governing law to implement the president's personal policies and agendas.

On the contrary, because the executive branch has already interpreted and applied the relevant legislation, the President now has no authority to effect a new and different interpretation.  ***The agency cannot claim that both the old interpretation and now the new interpretation are the correct interpretation.***  It is clearly arbitrary and capricious for the Defendants, each and every one of them, to now suddenly adopt and implement a new and different interpretation and in effect new regulations, especially without notice and comment by the public, for no other reason than the political preferences of temporary occupants of elected office.  It is an illegal and invalid exercise of power delegated from the Congress.

## I.  LEGAL STANDARD FOR  MOTION FOR  SUMMARY JUDGMENT

A party may move for summary judgment for the purposes of streamlining the case and saving judicial resources.  The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure ("FRCP") Rule 56(a), which states, in relevant part, as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Summary judgment, whether partial or comprehensive, is of assistance to a court because it streamlines litigation, whether granted on some or all of the claims, defenses, or legal issues in a case. [1]  FRCP 56 states, in relevant part, that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  *Id.*  Summary judgment is appropriate when the moving party demonstrates it is entitled to judgment as a matter of law. *Id.; Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

A summary judgment motion will be denied if a dispute about a "material" fact is "genuine."  The Court must decide if the assertion that a factual dispute exists is genuine or a dispute that is not significant to the result.  A case must proceed to trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986).   The presence of a factual dispute does not necessarily

---

[1]      See J. Bradford McCullough, The Ten Commandments of Summary Judgment Practice, 19 Pretrial 2 Prac. & Discovery at *2-3 (Winter/Spring 2011), available at http://www.lerchearly.com/files/10commandmentsofsummaryjudgment.pdf; see also Schwarzer et al., The Analysis and Decision of Summary Judgment Motions: A Monograph on Rule 56 of the Federal Rules of Civil Procedure, 139 F.R.D. 441, 495 (1992) ("[T]here can be no doubt that summary judgment should be regarded as a helpful device in appropriate cases for the just, speedy, and inexpensive resolution of litigation.")

mean that a summary judgment motion is inappropriate.  Rather, "the requirement is that there be no **genuine** issue of **material** fact." *Id.* at 248 *(emphasis added).*

If application of a law or of legal principles produces the same result regardless of whether an asserted fact is true or false, than the fact is not "material" under summary judgment. A fact that is perhaps important in other contexts might not change a dispositive application of a law or legal principle to the case.

Generally, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 243. Evidence may be presented in the form of pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. *Id.* at 247.

The moving party bears the burden of meeting this standard. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552  (1986).  "The moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp., v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

The Plaintiff hereby incorporates herein the facts established in Plaintiff's Statement of Undisputed Material Facts ("SUMF") and accompanying affidavits, and highlights these:

1.      On January 4 and 5, 2016, the White House ("Executive Office of the President") announced President Obama's series of orders and actions as an initiative which Obama titled "**New Executive Actions to Reduce Gun Violence and Make Our Communities Safer**" (hereinafter "new gun control rules"). SUMF ¶ 1.

2.      The Plaintiff challenges some of these actions.  Complaint ¶ 27; SUMF ¶ 2.

3.      The Defendants openly and voluntarily admit to having changed the law regulating the purchase and sale, transfer, gift, or conveyance, of firearms and the licensing requirements for those designated as "dealers" in firearms.  SUMF ¶ 4.

4.      The Defendants' new gun control rules now subject private citizens – including the Plaintiff – to potential criminal prosecution for felonies punishable by up to five years in jail and fines of up to $250,000 for each occurrence for conduct that was legal prior to January 4, 2016.  SUMF ¶ 5.

5.      The Press Secretary to the President is Josh Earnest.    SUMF ¶ 6.

6.      The Press Secretary to the President of the United States is authorized to speak on behalf of the Defendants when making his official statements to the press.  SUMF ¶ 7.

7.      The Defendants publicly stated in press conferences and public speeches, intended to be broadcast to the public and reported on publicly by journalists, that they changed the law because Congress would not agree with Defendant Obama's proposals to pass legislation to achieve their policy goals and agendas.  SUMF ¶ 8.

8.      The Defendants issued a "fact sheet" announcing the changes.  SUMF ¶ 9.

9.      Press Secretary Josh Earnest made statements on January 4 and 5, 2016, on behalf of the Defendants to explain the Defendants' new gun control rules.  SUMF ¶ 10.

10.      The Defendants' new gun control rules were put into effect immediately on January 5, 2016, as stated by John Earnest.  SUMF ¶ 11.

11.      Josh Earnest publicly stated to journalists on January 5, 2016, in public statements, intended to be repeated and broadcast to the public generally, that the Defendants had not (at least as of that time) released any orders, memoranda, directives, communications, regulations, etc., to the public embodying, containing, or communicating the Defendants' new

gun control rules.  Josh Earnest responded to journalists' questions that he would check if any official documents embodying the Defendants' new gun control rules exist.  SUMF ¶ 12.

12.    The Defendants did not change the law by having both houses of Congress vote to enact a new or modification of statute which was then presented to the president for signature or veto in accordance with the procedure mandated by the Constitution.  SUMF ¶ 13.

13.    The Defendants did not change the law by promulgating regulations under the Administrative Procedures Act through any notice and comment procedure.  SUMF ¶ 14.

14.    The Defendants' new gun control rules affect private persons not employees, personnel, or officials of the Bureau of Alcohol Tobacco and Firearm ("ATF").  SUMF ¶ 15.

15.    Defendants have in promulgated new law, rules, and/or regulations creating new forms of criminal liability that subject private citizens to criminal prosecution.  SUMF ¶ 16.

16.    The Defendants' new gun control rules (a) make a criminal violation of law what was previously lawful, and in other respects (b) expands criminal liability to persons previously exempt from criminal liability.  SUMF ¶ 17.

## III. THE LAW

### A.  ISSUES ALREADY DECIDED BY FIFTH CIRCUIT

Initially, almost the exact same legal principles have already been decided by the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit") – with a shared heritage, once part of the U.S. Court of Appeals for the Eleventh Circuit.

The Fifth Circuit has recently decided a remarkably similar case concerning Defendant Obama's change to the law and regulations granting of what is in effect amnesty or to put in more diplomatically safe harbor and various regulatory benefits to illegal aliens in  *Texas v. United States of America*, Appeal No. 15-40238 (5th Cir. November 9,  2015).  (*Texas v. United*

*States of America* is now on appeal to the U.S. Supreme Court.)

The method by which Defendant Obama changed the law concerning immigration enforcement is nearly identical – in process and substance (though on a different topic of course) – as the Defendants' new gun control rules at issue here.  Indeed, this case here involves the new gun control rules that are consciously intended to be the exact same maneuver by the Defendants as employed to grant safe harbor to illegal aliens, now reproduced, repeated, and employed to expand gun control regulation.   SUMF ¶  22.  The Defendants intend from their public announcements that their new gun control rules at issue in this case are created under the exact same legal principles and considerations as addressed in *Texas v. United States of America.*

There, the Fifth Circuit found that the exact same so-called "executive actions" (see, SUMF ¶ 32) violated the procedural requirements of the Administrative Procedures Act ("APA"), violated the substantive requirements of the APA (that is, conflicts with the statutes enacted by Congress and/or the Constitution), violated the Constitutional requirement that the president take care that the laws be faithfully executed, and likely other legal principles as well.

As a result, to the extent that the Eleventh Circuit shares a common history with the Fifth Circuit, *Texas v. United States of America* comes very close to this Circuit already having decided that the Defendants' new gun control rules here, now, are likewise illegal for the same reasons, under the same considerations, and under the same legal claims and legal requirements. Plaintiff incorporates that decision by reference herein.

**B.  LAW GOVERNING IN GENERAL:**

The Defendants have no power or authority to change the law by promulgating regulations other than by using power delegated from Congress and/or where the substantive statutes invest them with the delegated authority to interpret, apply, or add to the statutes, subject

to the Administrative Procedures Act.

The Second Amendment restricts the U.S. Government as follows:

> A well regulated Militia, being necessary to the security
> of a free State, the right of the people to keep and bear
> Arms, shall not be infringed.

The constitutional right to keep and bear arms without that right being infringed is an individual right. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The president has a duty that he "shall take Care that the Laws be faithfully executed…." Article II, Section 3, of the U.S. Constitution.  Whereas some amendments in the Constitution explicitly grant the authority of Congress to pass appropriate legislation to implement that amendment, *the Second Amendment conspicuously does not* grant such authority to Congress.

Moreover, "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Article I, Section 1, of the U.S. Constitution.   The Second Amendment is a prohibition on any action of government, not a power conveyed, so the "necessary and proper clause" does not apply here.

Under current law, the Gun Control Act of 1968 (as amended), Title 18, Chapter 44, § 922, it is unlawful "in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."   One is a "dealer" under 18 U.S.C. § 921 (a)(11) as follows:

> (11) The term "dealer" means (A) any person engaged in the
> business of selling firearms at wholesale or retail, (B) any person
> engaged in the business of repairing firearms or of making or
> fitting special barrels, stocks, or trigger mechanisms to firearms, or
> (C) any person who is a pawnbroker. The term "licensed dealer"
> means any dealer who is licensed under the provisions of this
> chapter.

Furthermore, under 18 U.S.C. § 921 (a)(21) requires that –

> (21) The term "engaged in the business" means—
> ***

8

(D) as applied to a dealer in firearms, as defined in section 921(a)(11)(B), a person who devotes time, attention, and labor to engaging in such activity *as a regular course of trade or business with the principal objective of livelihood and profit*, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms;

(Emphasis added.)

Moreover, 18 U.S.C. § 921 (a)(22) requires that –

(22) The term "with the principal objective of livelihood and profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

The Brady Handgun Violence Prevention Act of 1993  requires federally licensed firearms dealers to perform background checks on prospective firearms purchasers to ensure that a firearm transfer would not violate federal, state or local law.  The combination imposes the obligation on any "dealer" to (a) obtain a dealer license, (b) conduct background checks and (c) refuse to sell to would-be purchasers who do not pass a background check.  A violation of these requirements is a felony punishable by up to five years and fines up to $250,000.

Under current law, ATF Form 4473 is required only for sales or dispositions by a licensed manufacturer, importer, or dealer. 18 U.S.C. 923(g); 27 CFR 478.124.  Under 27 C.F.R. §478.32, implementing Title I, State Firearms Control Assistance (18 U.S.C. Chapter 44), of the Gun Control Act of 1968 (82 Stat. 1213) as amended by Pub. L. 99-308 (100 Stat. 449), Pub. L. 99-360 (100 Stat. 766), Pub. L. 99-408 (100 Stat. 920), Pub. L. 103-159 (107 Stat. 1536), Pub. L. 103-322 (108 Stat. 1796), Pub. L. 104-208 (110 Stat. 3009), and Pub. L. 105-277 (112 Stat. 2681), a person who has been formally adjudicated by a competent court to be

a) guilty of having committed a felony,

b) guilty of a crime of domestic violence, whether misdemeanor or felony,

c) ordered to comply with a "protective order" that meets certain precise criteria including explicitly forbidding any act of violence and determining that the person under the protective order has threatened or intimidated the victim,

d) "a mental defective or has been committed to a mental institution,"

e) a fugitive from justice, apparently when criminal prosecution is pending, a sentence after conviction has been ordered or sentencing is pending,

f) under indictment awaiting trial for a felony

is prohibited from buying a gun and a dealer is prohibited from selling to such a person.

Under current law, no person is denied the right to keep or bear arms or to buy, sell, own, or carry, a firearm without "due process of law" of that liberty interest in violation of the Fifth Amendment to the U.S. Constitution by judicial adjudication in a court of law.  A background check is intended to detect any of these conditions and block such a sale of firearms.

The National Instant Criminal Background Check System (known as "NICS") is managed by the Federal Bureau of Investigations ("FBI").  A licensed dealer in firearms must submit Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473 for processing by the FBI, to determine the results.  28 C.F.R. 25.

As a result of the foregoing, ***Congress*** knowingly and intentionally exempted individuals who buy or sell an occasional gun when they are not earning a livelihood or profit from buying or selling firearms.  Only those who are in the business of (seeking to earn a livelihood from) a trade in firearms are covered by these various requirements.

**C.  DEFENDANTS NEW GUN CONTROL RULES**

Now, however, on January 4, 2016, the Defendants ordered ATF officials and staff to change the enforcement of the laws to a new and different interpretation and enforcement of the statutes. Specifically, the Defendants ordered the ATF to apply a new and different interpretation of ***who is a "dealer"*** for the purposes of these statutes, to treat almost anyone as a dealer, regardless of whether or not the person is in the business of trading in firearms or earning a livelihood (or seeking to) by trading in firearms.  Now, going forward, any person who buys or sells even one or two guns, even as a private individual (that is, not operating any recognizable business trading in firearms), as a hobbyist or antique collector will be treated as a "dealer" for the purposes of requiring a dealer's license, requiring them to perform (collect and submit the necessary information for) a background check, and prohibiting them from selling to persons who do not undergo and pass a background check.

Furthermore, the Defendants ordered the ATF, Social Security Administration, and other agencies to change their enforcement, implementation and interpretation of these statutes to strip the Plaintiff and other U.S. citizens of their rights of due process by judicial proceedings.

Under current law, a person may lose their Second Amendment rights only upon the formal adjudication by a court of law that the person is either (a) guilty of a felony after a full criminal prosecution or (b) mentally incompetent pursuant to 18 U.S.C. § 922(g)(4).

Now, however, under the Defendants' new gun control rules, the Defendants have ordered ATF officials and personnel, and those of other agencies, to load into the NISC background check database persons who have mental health "issues" ***but who have not been formally adjudicated as mentally incompetent by a court of law.***  SUMF ¶ 23.  The Defendants have ordered the Social Security Administration to report all persons receiving disability payments to be included in the NISC database. SUMF ¶ 24. The Defendants ask all medical

11

professionals to report their patients who exhibit any poorly-defined mental health "issues" and seek to change professional rules for those professions to require such reports.  SUMF ¶ 25.

The Defendants' official requests that such vague information be reported to the NISC database from medical professionals logically signals that they will receive such information in the database and use it to deny Second Amendment rights to such patients and perhaps for other illegal purposes in violation of privacy and other rights as well.  It is a reasonable inference that requests for the information to be reported to NISC means that the Defendants intend to include the information in the NISC database and actually use it to block gun purchases.  Otherwise, there would be no purpose to asking doctors to report the information.

As a result of the foregoing, under the Defendants' new January 4, 2016, initiative, persons including the Plaintiff can lose their rights under the Second Amendment without the due process of law for that liberty interest under the Fifth Amendment, merely by the subjective opinion of someone that they have a mental health issue.

The prohibition on a person with a mental health "issue" from buying or owning a gun is a dramatic change from the laws enacted by Congress, illegal, invalid, and *ultra vires.*  The new standards for who has a mental health "issue"  are poorly-defined and void for vagueness.

### D.  COURT MUST CONSIDER THE SUBSTANCE, NOT THE LABEL

The federal courts have rejected the idea that an agency can escape judicial review under Section 704 of the APA by labeling a rule as 'guidance.' *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir. 1986); *see also Continental Airlines, Inc. v. CAB,* 173 U.S. App. D.C. 1, 522 F.2d 107, 124 (D.C. Cir. 1974) ("The label an agency attaches to its action is not determinative."). *Nicholas v. INS*, 590 F.2d 802, 807-08 (9th Cir. 1979), held that the Immigration and Naturalization Service's 1978 'instructions' were a substantive rule requiring

rule-making formalities under the APA.

Here, the Defendants have announced that as of January 5, 2016, taking immediate effect, SUMF ¶ 11, citizens like the Plaintiff are at risk of criminal prosecution for felonies punishable by up to five years in jail and fines of up to $250,000 for each incident whose actions were lawful prior to January 4, 2016.  SUMF ¶ 26.  Worse, the criteria for who may be convicted as guilty of such felonies is far more _vague_ after January 5, 2016, than were the criteria prior to January 4, 2016.  *See, discussion, infra.*

The substance that this Court must consider is that the Defendants' actions create criminal liability after January 5, 2016, for persons and conduct which was lawful prior to January 4, 2016.  *Id.*  Therefore, regardless of the label by which the Defendants attempt to present their actions, they have clearly created new law, modifying congressional enactments. The Defendants have exceeded their constitutional powers and the APA cannot confer such power upon them.  The Defendants failed to employ the APA's procedures or authority.

### E.  CHANGE IN REGULATIONS IS ARBITRARY & CAPRICIOUS:  ABOUT-FACE REVERSAL UNLAWFUL

To the extent that the Defendants are changing the interpretation, application, and treatment of this subject matter under existing law and regulations, the departure from past practice renders the Defendants actions now necessarily arbitrary, capricious, and inherently unreasonable. That is, where the agency's specialized expertise has in the past led to one result, now the Defendants choose a contrary result.  Both results cannot be simultaneously justified by the same facts and circumstances as informed by the agency's experience and expertise.

The undeniable core of the Defendants' changes to gun control laws is that prior to January 4, 2016, the key terms of gun control laws were interpreted and applied one way, but on and after January 5, 2016, the Defendants interpret and apply those same gun control laws in a

different way.  SUMF ¶ 27.   Both interpretations cannot be correct at the same time.

Furthermore, the public announcements by the Defendants, including for years before the change, confirm that the change is purely a political disagreement with Congress.  SUMF ¶ 28. Just as with safe harbor for illegal aliens, the Defendants here announced the reason for their actions being that Congress would not agree with President Obama. SUMF ¶ 29.

It is undeniable that the change was made because the Defendants prefer one policy choice over another, SUMF ¶ 30, not because there have been any changes in circumstances or facts to support the change.  The Defendants have been explicit in stating that the only circumstance prompting their action is their failure to browbeat Congress, *Id.,* into violating the U.S. Constitution's Second Amendment, rejecting the voices of the American people, and agreeing instead with the Defendants by doing the Defendants' bidding.

Therefore, the Defendants are clearly legislating, by their own admission, which violates the U.S. Constitution.  But the Defendants cannot claim to be exercising delegated authority.

The U.S. Supreme Court has made clear that once an agency has taken a long-standing position interpreting a law assigned to it for implementation, the agency cannot reverse that position and/or interpretation without justifying the change.  *Motor Veh. Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29 (1983).

> The agency's action in promulgating such standards therefore may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park v. Volpe,* 401 U. S. 402, 401 U. S. 414 (1971); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U. S. 281 (1974). We believe that the rescission or modification of an occupant protection standard is subject to the same test. Section 103(b) of the Act, 15 U.S.C. § 1392(b), states that the procedural and judicial review provisions of the Administrative Procedure Act "shall apply to all orders establishing, amending, or revoking a Federal motor vehicle safety standard," and suggests no difference in the scope of

judicial review depending upon the nature of the agency's action.

*State Farm,* 463 U.S. at 41.

Thus, the U.S.Supreme Court, above, found that the same standard applies to "amending or revoking" orders as to "establishing" orders.  Changing an agency position once established must meet the same legal standards under the APA.  However, as a *factual* matter, two different interpretations cannot both be justified by the same facts under the APA.  It is presumptively arbitrary and capricious to switch from a long-standing agency position.  As a factual question, the agency faces a very heavy burden.  To change purely out of political preferences is prohibited as arbitrary, capricious, and unreasonable.

> A "settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress. There is, then, at least a presumption that those policies will be carried out best if the settled rule is adhered to." *Atchison, T. & S. F. R. Co. v. Wichita Bd. of Trade,* 412 U. S. 800, 412 U. S. 807-808 (1973). Accordingly, an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.

*State Farm,* 463 U.S. at 42. [2]

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U. S. 156, 371 U. S. 168 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

---

[2]     Note that controversy over whether a higher legal standard applies to a change is a straw man argument.  The problem is justifying how the previous interpretation was correct under the law and the facts, but now a different interpretation is also supported by the same law and the same facts.  It is a distraction to debate a higher legal standard.  Factual justification creates a severe hurdle.  *Cf., Federal Communications Commission v. Fox Television Stations, Inc.*, No. 10-1293, ___ U.S. ___ (2012) (legal standard is not higher for a changed regulation than for originally promulgating the regulation).  But the legal standard is not the problem here.  It is the same facts and the same law being used to justify different results from the same record.

> *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra,* at 419 U. S. 285; *Citizens to Preserve Overton Park v. Volpe, supra,* at 401 U. S. 416. Normally, an agency rule would be arbitrary and capricious if the agency has relied on ***factors which Congress has not intended it to consider,*** entirely failed to consider an important aspect of the problem, ***offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.*** The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.,* 332 U. S. 194, 332 U. S. 196 (1947).

*State Farm,* 463 U.S. at 43 *(emphases added).* **Note that where the agency has failed to "supply a reasoned basis" the Court may not supply one after the fact.** *Id.*

> The Administrative Procedure Act deems unlawful any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2), but to invalidate a regulation under *State Farm* review, see *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983), a challenger must show the agency action is not a product of reasoned decision making, see *Fox,* 684 F.3d at 74-75. This is "a heavy burden," since *State Farm* entails a "very deferential scope of review" that forbids a court from "substitut[ing] its judgment for that of the agency." *Transmission Access Policy Study Grp. v. FERC,* 225 F.3d 667, 714 (D.C. Cir. 2000). The APA's arbitrary and capricious standard requires, inter alia, that an agency adequately explain its action so that a reviewing court can "evaluate the agency's rationale at the time of decision." *Pension Benefit Guar. Corp. v. LTV Corp.,*  496 U.S. 633, 654 (1990).

*Van Hollen v. Fed. Election Comm'n*, Page 17 (D.C. Cir., Civ. No. 1:11-cv-00766,  2016).

## F.  DEFENDANTS' NEW REGULATIONS ARE VOID FOR VAGUENESS

Where the administration of the laws were in the past reasonably clear, the Defendants' changes to the laws serve mainly to confuse and obscure what conduct will subject a person to conviction of felonies for criminal violations of the law.

Under "[t]he void-for-vagueness doctrine[,] . . . 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily

guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (third alteration in original) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629,  104 S. Ct. 3244 3256, 82 L. Ed. 2d 462 (1984)). Thus, a statute is unconstitutionally vague if "it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03,  86 S. Ct. 518, 520-21,  15 L. Ed. 2d 447 (1966).

The Defendants' spokesman, Press Secretary Josh Earnest states that the changes went into effect "immediately" on January 5, 2016, SUMF ¶ 11.  He also admitted that no public, official documents have been issued, SUMF ¶ 12, so that the public has no specific, official document to look to to even attempt to understand what conduct will be permissible.

As the Defendants admit, the new rules are not readily understandable:

**What activities require a dealer's license?**

Federal law does not establish a "bright-line" rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement.  Instead, determining whether you are "engaged in the business" of dealing in firearms requires looking at the specific facts and circumstances of your activities. [3]

And:

It is important to note that no single factor is determinative, and that the relative importance of any of the factors will vary depending on the facts and circumstances applicable to the individual seller.[4]

As the Defendants also admit, the new rules are not readily understandable:

The ATF will engage in a "business educational initiative" in the

---

[3]    SUMF ¶ 21.
[4]    *Id.*

first part of 2016, Lynch said, to help gun dealers, hobbyists and collectors understand the new guidance. This effort will target gun shows, flea markets and online dealers. [5]

And:

To improve enforcement, the FBI aims to start processing background checks 24 hours a day, seven days a week. It also aims to improve its notification to local authorities when someone unlawfully attempts to buy a gun.

For instance, Lynch explained, if an individual sells a gun clearly for profit, or if they buy and sell a gun kept in its original packaging, they may be considered a dealer. [6]

## G.  DEFENDANTS' NEW REGULATIONS VIOLATE PROCEDURAL REQUIREMENTS OF ADMINISTRATIVE PROCEDURES ACT

It is overwhelmingly clear that the Defendants have changed the law without complying with the procedural requirements of the APA.  This exact question has been decided by *Texas v. United States of America*, discussed in Section A, *supra*.  For the reasons extensively discussed and decided against the Defendants there, the Defendants new gun control rules violate the procedural requirements of the APA – specifically that, (1) the label asserted by the Defendants for their actions is not controlling, (2) the new gun control rules subject new classes of private persons and new conduct by persons who are not government employees to criminal liability of felonies and are therefore regulations governed by the APA, not guidance to governmental employees,  (3) the Defendants must undergo "informal rule-making" [7] which requires a rigorous process of notice and comment and rules of rationality and faithfulness to governing statutes.

As set forth in the persuasive and almost controlling precedent of *Texas v. United States of America*, the Defendants violated the procedural requirements of the APA.

---

[5]     SUMF ¶ 31.

[6]     *Id.*

[7]     "Informal rule-making" is contrasted with old procedures involving live testimony and hearings.  It is far from informal, but is called this in contrast with more rigorous older methods.

## H.  DEFENDANTS' NEW REGULATIONS VIOLATE SUBSTANTIVE REQUIREMENTS OF ADMINISTRATIVE PROCEDURES ACT, BY CONFLICTING WITH CONGRESSIONAL INTENT

Similarly, the Defendants' new gun control rules also violates the substantive side of the APA and the U.S. Constitution.  The APA effectively incorporates the Constitution and provides a private, civil right of action, because the APA requires substantive fidelity to the Constitution and the governing Congressional enactments.

Once again, the Fifth Circuit in *Texas v. United States of America* already decided that a very similar scheme violated the substantive side of the APA, and the underlying provisions of the U.S. Constitution and substantive statutes.  Specifically, the president is not a legislature, does not have law-making powers, and may not usurp the power of the U.S. Congress.

As the U.S. Supreme Court recently illustrated with regard to regulation of greenhouse gases from certain types of sources, a Federal Department "must ground its reasons for action or inaction in the statute." Here, however, the Defendants clearly ground their reasons for acting in politics and lobbying Congress to pass the legislation they desire, not in the statute.

> In short, EPA has offered no reasoned explanation for its refusal to decide whether greenhouse gases cause or contribute to climate change. ***Its action was therefore arbitrary, capricious, . . . or otherwise not in accordance with law.*** 42 U. S. C. §7607(d)(9)(A). We need not and do not reach the question whether on remand EPA must make an endangerment finding, or ***whether policy concerns can inform EPA's actions*** in the event that it makes such a finding. Cf. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843-844 (1984). ***We hold only that EPA must ground its reasons for action or inaction in the statute.***

*Massachusetts v. Environmental Protection Agency*, 549 U.S. 497(2007) (emphases added).

## IV. CONCLUSION

The Plaintiff respectfully requests that the Court grant summary judgment on his claims

pursuant to FRCP Rule 56. This case does not just present important constitutional and administrative law issues about the illegal and *ultra-vires* actions of the current occupant of the White House, but the likely similar illegal executive actions of future presidents, be they Democrat or Republican. Thus, much more is at stake here than so called gun control executive orders and actions by President Obama. It is about the need for this Court to order and to create judicial precedent for all presidents to obey the U.S. Constitution and the APA; that is the rule of law.

As our Founding Father and Second American President John Adams proclaimed in advocating for the Declaration of Independence, our country was founded to be a nation of laws and not men. This Court has the unique and historic opportunity to further and thus honor this noble principle for present and future American generations.

Dated: February 3, 2016                          Respectfully submitted,

                                                  */s/ Larry Klayman*
                                                 Larry Klayman, Esq.
                                                 FL Bar No. 246220
                                                 7050 W Palmetto Park Road, Unit 15-287
                                                 Boca Raton, Florida 33433
                                                 Telephone:  (310) 595-0800
                                                 E-mail:  leklayman@gmail.com


The Defendants do not consent to the Plaintiff's motion for  summary judgment.

                                                  */s/ Larry Klayman*
                                                 Larry Klayman, Esq.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this February 3, 2016 a true and correct copy of the foregoing Motion to for Summary Judgment was filed with the Court through the Court's Electronic Case Filing system, and will be delivered electronically to all counsel for the Defendants who have entered an appearance in this case through the ECF system, including:

Mr. Anthony Erickson Pogorzelski, Esq.
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9296
Fax: (305) 530-7139
Email: anthony.pogorzelski@usdoj.gov

        _/s/ Larry Klayman_____
        Larry Klayman, Esq.