**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-80087-CIV-MIDDLEBROOKS**

**LARRY KLAYMAN,**

      **Plaintiff,**

**v.**

**BARACK OBAMA** *et al.***,**

      **Defendants.**
_____/

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT,**
**AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

I.      STATUTORY AND REGULATORY FRAMEWORK ................................. 3

      A.    The ATF Guidance ................................................................. 5

      B.    SSA's Potential Rulemaking ................................................ 7

      C.    Presidential Memorandum ................................................... 9

II.     PROCEDURAL BACKGROUND ........................................................ 10

ARGUMENT ..................................................................................................... 11

I.      THE COURT MUST DISMISS THE COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION ............................................... 11

      A.    The Court Cannot Exercise Jurisdiction Over Plaintiff's Challenge
to the ATF Guidance ............................................................ 13

      B.    Plaintiff Has Shown No Injury-in-Fact Traceable to the Future
SSA Rule ............................................................................... 19

      C.    The Court Cannot Consider Plaintiff's Challenge to the
Presidential Memorandum ..................................................... 22

II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE GRANTED AND PLAINTIFF'S MOTION SHOULD
BE DENIED ...................................................................................... 24

      A.    Plaintiff Has Not Tried, Much Less Succeeded, To Meet His
Burden to Show That He Has Standing ................................. 24

      B.    Plaintiff's Procedural and Substantive APA Claims Are Unavailing ....... 24

           1.    *Plaintiff's Procedural APA Challenges Are Without Merit* .......... 24

           2.    *Plaintiff Cannot Establish That The ATF Guidance is
Arbitrary and Capricious or Otherwise a Substantive APA
Violation* ......................................................................... 27

      C.    None of the Initiatives Challenged Here Exceeds the Executive's
Authority ............................................................................... 28

i

D.    Plaintiff's Facial Void-for-Vagueness Challenge is Procedurally
      Improper and, in Any Event, Entirely Without Merit .............................. 30

E.    This Court Cannot Review the President's Compliance With the
      Take Care Clause, but Even if it Could, No Violation Has
      Occurred Here ......................................................................................... 31

F.    Plaintiff Has Failed Adequately to Present His Claim that
      Defendants Have Denied Second Amendment Rights Without Due
      Process of Law ......................................................................................... 32

**CONCLUSION** ...................................................................................................... 33

## **TABLE OF AUTHORITIES**

### **Cases**

*Abramski v. United States*,
   134 S. Ct. 2259 (2014) ............................................................................................ 5, 6, 18

*Akiachak Native Cmty. v. Jewell*,
   995 F. Supp. 2d 7 (D.D.C. 2014) ..................................................................................... 22

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (D.C. Cir. 2000) ....................................................................................... 16

*Armstrong v. Exceptional Child Ctr., Inc.*,
   135 S. Ct. 1378 (2015) ..................................................................................................... 32

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
   785 F.3d 710 (D.C. Cir. 2015) ......................................................................................... 25

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ......................................................................................................... 14

*Baker v. Carr*,
   369 U.S. 186 (1962) ......................................................................................................... 32

*Bennett v. Spear*,
   520 U.S. 154 (1997) .................................................................................................... 13, 25

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978) ......................................................................................................... 29

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ......................................................................................................... 18

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ......................................................................................................... 28

*City of San Diego v. Whitman*,
   242 F.3d 1097 (9th Cir. 2001) ......................................................................................... 21

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) ......................................................................................... 25

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   710 F.2d 842 (D.C. Cir. 1983) ......................................................................................... 22

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ............................................................... 15

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006) .............................................................. 20

*Fanin v. U.S. Dep't of Veterans Affairs*,
   572 F.3d 868 (11th Cir. 2009) ............................................................... 13

*Florida Audubon Soc. v. Bentsen*,
   94 F.3d 658 (D.C. Cir. 1996) ................................................................. 15

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ....................................................................... 23, 32

*Fund for Animals, Inc. v. Rice*,
   85 F.3d 535 (11th Cir. 1996) ................................................................. 28

*Golden & Zimmerman, LLC v. Domenech*,
   599 F.3d 426 (4th Cir. 2010) ............................................................ 18, 19

*Harris v. Mexican Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009) .............................................................. 31

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .......................................................................... 29

*Houston v. Marod Supermarkets, Inc.*,
   733 F.3d 1323 (11th Cir. 2013) .............................................................. 20

*In re Murray Energy Corp.*,
   788 F.3d 330 (D.C. Cir. 2015) ............................................................... 21

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ............................................................... 19

*Johnson v. Astrue*,
   No. CIV.A. 1:08CV908-WC, 2009 WL 3586599 (M.D. Ala. Oct. 27, 2009)......................... 26

*Klayman v. Obama*,
   No. 15-81023-CIV, 2015 WL 5269958 (S.D. Fla. Sept. 10, 2015)......................... 12

*Kolender v. Lawson*,
   461 U.S. 352 (1983) .......................................................................... 31

iv

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................................ 23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................... 11, 12, 24

*Maynard v. Cartwright*,
    486 U.S. 356 (1988) ................................................................................................ 31

*Media Gen. Operations Inc. v. Herman*,
    152 F. Supp. 2d 1368 (S.D. Ga. 2001) ................................................................... 22

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1867) .................................................................................. 32

*Mistretta v. United States*,
    488 U.S. 361 (1989) ................................................................................................ 29

*Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*,
    180 F.3d 1192 (10th Cir. 1999) .............................................................................. 21

*Montana Shooting Sports Ass'n v. Holder*,
    No. CV-09-147-DWM-JCL, 2010 WL 3926029 (D. Mont. Aug. 31, 2010) .......................... 18

*Nat'l Min. Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) .................................................................. 15, 16, 25

*Nat'l Min. Ass'n v. Sec'y of Labor*,
    589 F.3d 1368 (11th Cir. 2009) .............................................................................. 25

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) .................................................................. 13, 21, 25

*P & V Enterprises v. U.S. Army Corps of Eng'rs*,
    516 F.3d 1021 (D.C. Cir. 2008) .............................................................................. 21

*Perez v. Mortgage Bankers Ass'n*,
    135 S. Ct. 1199 (2015) .............................................................................. 24, 25, 27

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) .................................................................... 21, 22

*San Diego Cty. Gun Rights Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) .................................................................................. 30

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n,*
    789 F.2d 26 (D.C. Cir. 1986) ................................................................ 28

*Sierra Club v. Johnson,*
    436 F.3d 1269 (11th Cir. 2006) ............................................................ 15

*Simon v. E. Kentucky Welfare Rights Org.,*
    426 U.S. 26 (1976) ................................................................................ 12

*Susan B. Anthony List v. Driehaus,*
    134 S. Ct. 2334 (2014) .................................................................... 12, 14

*Tennessee Valley Auth. v. Whitman,*
    336 F.3d 1236 (11th Cir. 2003) ............................................................ 15

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ..................................................... 25, 26, 31

*Touby v. United States,*
    500 U.S. 160 (1991) ............................................................................. 29

*United States v. Apel,*
    134 S. Ct. 1144 (2014) ......................................................................... 18

*United States v. Armstrong,*
    517 U.S. 456 (1996) ............................................................................. 29

*United States v. Beecham,*
    993 F.2d 1539 (4th Cir. 1993) .............................................................. 18

*United States v. Brenner,*
    481 F. App'x 124 (5th Cir. 2012) .................................................... 16, 17

*United States v. Caceres,*
    440 U.S. 741 (1979) .......................................................................... 6, 16

*United States v. Carter,*
    801 F.2d 78 (2d Cir. 1986) .............................................................. 17, 18

*United States v. Dean,*
    604 F.3d 1275 (11th Cir. 2010) ............................................................ 26

*United States v. Duran,*
    596 F.3d 1283 (11th Cir. 2010) ............................................................ 30

*United States v. Esquenazi*,
    752 F.3d 912 (11th Cir. 2014) ......................................................... 30

*United States v. Gray*,
    470 F. App'x 468 (6th Cir. 2012) ..................................................... 17

*United States v. Mazurie*,
    419 U.S. 544 (1975).......................................................................... 30

*United States v. Nadirashvili*,
    655 F.3d 114 (2d Cir. 2011)............................................................. 17

*United States v. Ortiz-Zayas*,
    110 F. App'x 181 (2d Cir. 2004) ...................................................... 17

*United States v. Spies*,
    661 F.3d 1158 (2d Cir. 2011)........................................................... 17

*United States v. Tyson*,
    653 F.3d 192 (3d Cir. 2011)............................................................. 17

*United States v. Valdes*,
    No. 12-80234-CR, 2013 WL 5561131 (S.D. Fla. Oct. 4, 2013)........... 17

*United States v. Wilmoth*,
    636 F.2d 123 (5th Cir. 1981) ...................................................... 17, 18

*Van Vechten v. Elenson*,
    No. 12-80668-CIV, 2013 WL 3776273 (S.D. Fla. July 17, 2013) ................... 26, 33

## Statutes

5 U.S.C. § 551(1) ........................................................................................ 23

5 U.S.C. § 551(13) ........................................................................... 19, 21, 23

5 U.S.C. § 553 ........................................................................................ 1, 15

5 U.S.C. § 553(b) ....................................................................................... 29

5 U.S.C. § 701(a)(2) ................................................................................... 23

5 U.S.C. § 704 ............................................................................................ 12

18 U.S.C. § 847 .......................................................................................... 29

18 U.S.C. § 921 ............................................................................................ 5

18 U.S.C. § 921(a)(21)(C) ................................................................................ 6, 13, 14

18 U.S.C. § 922(a)(1)(A) .................................................................................... 5, 13

18 U.S.C. § 922 ................................................................................................ 14, 32

18 U.S.C. § 922(d)(4) ............................................................................................... 8

18 U.S.C. § 922(t)(1) ................................................................................................ 7

**Rules**

Fed. R. Civ. P. 56(e) .............................................................................................. 24

**Regulations**

27 C.F.R. § 478.11 ............................................................................................... 7, 8

28 C.F.R. § 25.2 ....................................................................................................... 8

45 C.F.R. § 164.512 ............................................................................................... 20

81 Fed. Reg. 382-01 (2016) .................................................................................. 20

## INTRODUCTION

This lawsuit is premised upon Plaintiff's fundamental misunderstanding — and consequent misrepresentation — of the executive actions that he challenges. Three measures in particular, announced in January 2016 as part of a broader series of executive initiatives aimed at reducing gun violence, are the object of Plaintiff's suit, but none is as Plaintiff claims it to be. First, Plaintiff asks this Court to strike down a Guidance document ("ATF Guidance") published by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Contrary to Plaintiff's representations to the Court, that document does not "transform[] the definition of key Terms" — or any terms whatsoever — and thus certainly does not "invent a different regime of regulation of firearms." Complaint ("Compl.") at 2, ECF No. 1. Rather, the Guidance merely provides the public with a plain English summary of when the relevant statutory scheme deems an individual to be a firearms "dealer" such that he or she must obtain a Federal Firearms License.

Second, Plaintiff challenges the announcement that the Social Security Administration ("SSA") will begin the rulemaking process to ensure that appropriate information regarding individuals who are prohibited from owning a firearm due to a mental health disqualifier is reported to the National Instant Criminal Background Check System ("NICS"). But while Plaintiff would have the Court believe that, for instance, "Defendants have ordered the Social Security Administration to report all persons receiving disability payments to be included in the NISC database," *id.* ¶ 66, no orders of any kind have issued. All that has happened is that the White House announced that a federal agency is initiating notice-and-comment rulemaking pursuant to the requirements set forth in the Administrative Procedure Act, 5 U.S.C. § 553.

1

Third, Plaintiff objects to a Presidential Memorandum directing the Attorney General, the Secretary of Homeland Security, and the Secretary of Defense to research gun safety technology. Plaintiff suggests that "Defendant Obama's Presidential Memorandum purports to legislate, authorize, and appropriate federal funds from the treasury to be used for a particular purpose to conduct research and development into changing the design and technology of guns," *id.* ¶ 79, but that assertion is flatly contradicted by the text of the memorandum itself.

In short, contrary to Plaintiff's entirely unsubstantiated assertions, the three measures at issue here do not "rewrit[e] . . . laws burdening and abridging the fundamental rights of the Plaintiff and other U.S. citizens under the Second Amendment."  Compl. at 2.  Rather, this suit boils down to Plaintiff's general disagreement with the Executive Branch's policy priorities. Although Plaintiff has the right to hold such a view and to voice it vociferously, Article III of the Constitution forecloses Plaintiff's claims.

Quite clearly, the Court lacks subject matter jurisdiction because Plaintiff has failed to allege — or, now that he has moved for summary judgment, point to record evidence that demonstrates — an injury-in-fact sufficient to establish Article III standing.  Plaintiff cannot challenge the ATF Guidance because he has not alleged that he does or will function as a firearms dealer or how, even if he did, a simple recitation of the extant legal scheme injures him. Plaintiff has likewise failed adequately to allege that he is injured by the yet-to-be-promulgated SSA rule.  Simply put, it is not yet known exactly what the final rule will look like and it is thus *impossible* to claim injury.  Much the same, Plaintiff has also failed to offer any allegations that would demonstrate he is injured by a memorandum from the President to officials in his Cabinet directing that they research gun safety technology.  Finally, Plaintiff's APA claims suffer from an additional jurisdictional defect, *viz.*, that he has not challenged final agency action, as the

APA requires.  The hallmark of final agency action is that it fixes legal rights and obligations, and none of the three policies in question here does so.

Should the Court not dismiss this case on jurisdictional grounds, it should deny Plaintiff's motion for summary judgment and enter summary judgment for Defendants.  The measures in question were well within the bounds of executive authority.  Neither the APA's procedural requirements nor its substantive mandates were offended.  Notice-and-comment rulemaking was not required for the ATF Guidance because it does not set binding norms and it is still forthcoming for the future SSA rule.  Substantively, the ATF Guidance is fully consistent with the relevant statutes, the Second Amendment, and the Due Process Clause.  Additionally, Plaintiff's vagueness challenge is procedurally improper and, in any event, meritless.  Plaintiff's Take Care Clause claim is not just duplicative of his other grievances, but also fails at the outset both because it is non-justiciable and because Plaintiff has no cause of action, or, in any event, because Defendants have acted consistently with their constitutional obligations.  And Plaintiff's claim that the future SSA rule denies him his Second Amendment rights without Due Process is so lacking in factual context that it cannot possibly be evaluated by the Court.  Therefore, even if the Court had jurisdiction over Plaintiff's claims, which it does not, the Court should grant summary judgment to Defendants.

## BACKGROUND

## I.      STATUTORY AND REGULATORY FRAMEWORK

Recognizing that "[g]un violence has taken a heartbreaking toll on too many communities across the country," President Obama in early January 2016 announced a series of initiatives aimed at reducing gun violence.  *See* Fact Sheet at 2, ECF No. 8-3.  The policies announced by the President, and crafted in consultation with the Attorney General, FBI Director, and Head of

the Bureau of ATF were designed "to strengthen our enforcement and prevent guns from falling into the wrong hands to make sure that criminals, people who are mentally unstable, those who could pose a danger to themselves or others are less likely to get them." THE WHITE HOUSE, *Remarks by the President on Recommendations on Gun Safety*, https://www.whitehouse.gov/the-press-office/2016/01/05/remarks-president-recommendations-gun-safety (Jan. 4, 2016). In announcing the new initiatives, the President acknowledged "the strong tradition of gun ownership in this country" and expressed his belief that "the recommendations that are being made by my team here are ones that are entirely consistent with the Second Amendment and people's lawful right to bear arms." *Id.*

Plaintiff challenges three initiatives in particular. First, Plaintiff challenges guidance issued by ATF to help those intending to buy or sell firearms to understand when federal law requires a license. *See* ECF No. 8-5, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Do I need a License to Buy and Sell Firearms*, ATF Publication 5310.2, https://www.atf.gov/file/100871/download (Jan. 2016) ("ATF Guidance"). Second, the White House announced that the Social Security Administration would begin the rulemaking process under the Administrative Procedure Act to provide for more information about SSA beneficiaries who are prohibited from possessing a firearm for mental health reasons to be included in the existing background check system. *See* Fact Sheet 10. Third, the President issued a memorandum to the Secretaries of Defense and Homeland Security and the Attorney General calling for the development and promotion of smart gun technology. *See* THE WHITE HOUSE, *Memorandum — Promoting Smart Gun Technology*, https://www.whitehouse.gov/the-press-office/2016/01/05/memorandum-promoting-smart-gun-technology (Jan. 4, 2016) ("Presidential Memorandum"). Those initiatives are more fully set forth as follows.

4

A.    The ATF Guidance

Pursuant to the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, codified at 18 U.S.C. §§ 921 *et seq.*, federal law requires that those who deal in firearms be licensed by ATF.  Federal Firearms Licensees ("FFLs") "are critical partners in promoting public safety," ATF Guidance ii, insofar as the statutory scheme accords them the responsibility to keep guns from falling into the wrong hands by running background checks on potential firearms purchasers; ensure that guns can be traced back to their first retail purchaser by keeping records of transactions; and facilitate gun safety by providing child safety locks with every transferred handgun and having secure gun storage or safety locks available any place where they sell firearms.  *See id.*

The Gun Control Act, as amended, prohibits "engag[ing] in the business of importing, manufacturing, or dealing in firearms" unless one is "a licensed importer, licensed manufacturer, or licensed dealer."  18 U.S.C. § 922(a)(1)(A).  A violation of this provision is punishable by up to five years in prison.  *Id.* § 924(a)(1)(C).  The statutory scheme also imposes on FFLs certain duties.  Licensed dealers must "verify, at the point of sale, whether a potential buyer may lawfully own a gun," *Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014), by, among other things, contacting NICS to determine whether the purchaser is qualified to own the firearm, 18 U.S.C. § 922(t)(1)(A)–(B).  Dealers must also "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."  *Id.* § 923(g)(1)(A).

The statute defines "dealer" as:

(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker.

*Id.* § 921(11).   In turn, as a result of the Firearm Owners' Protection Act, Pub. L. No. 99-308, § 101, 100 Stat. 449, 450 (1986), the Act sets forth that one who is "engaged in the business of selling firearms," as used in the definition of "dealer," encompasses "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms," 18 U.S.C. § 921(a)(21)(C).   Excluded from the statute's reach, however, are "person[s] who make[] occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell[] all or part of [their] personal collection of firearms."   *Id.*   Finally, the Act also defines "with the principal objective of livelihood and profit" to mean "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection."   *Id.* § 921(a)(22).

To become a licensed dealer, one must be at least twenty-one years old, eligible to transport firearms, not a past violator of the statute, truthful in his application, and willing and able to make certain certifications.   *Id.* § 923(d)(1)(A)–(F).   An applicant for a federal firearms license must also pay an annual fee.   *Id.* § 923(a)(3)(A).

Entitled "Do I need a License to Buy and Sell Firearms?," the ATF Guidance challenged by Plaintiff endeavors to explain, in plain language, the law governing when a license is required.   After stating on its inside cover that "[t]he guidance set forth herein has no regulatory effect and is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding, *see United States v. Caceres*, 440 U.S. 741 (1979)," the publication observes that "[d]etermining whether your firearm-related activities require a license is a fact-specific inquiry that involves application of factors set by federal statute."   ATF Guidance ii.   The

6

Guidance thus proceeds to set forth the statutory and regulatory definitions of dealer.  *See id.* at 2; *see also* 27 C.F.R. § 478.11.

The Guidance explains that place of business is not dispositive in determining who is a dealer.  ATF Guidance 3.  In fact, the Guidance notes, under extant federal law, there is no "bright-line rule for when a federal firearms license is required." *Id.* at 4.  Consequently, just as place of business cannot be the end of the inquiry, "there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." *Id.*  The Guidance stresses instead that the analysis is more fact bound, adding: "As a general rule, you will need a license if you repetitively buy and sell firearms with the principal motive of making a profit.  In contrast, if you only make occasional sales of firearms from your personal collection, you do not need to be licensed." *Id.* (emphasis omitted).

The next section of the Guidance is labeled "Factors Identified by Federal Courts." *Id.*  The Guidance explains that "[f]ederal courts have identified several factors that can help you determine on what side of that line your activities fall." *Id.*  Those factors include: "whether you represent yourself as a dealer in firearms; whether you are repetitively buying and selling firearms; the circumstances under which you are selling firearms; and whether you are looking to make a profit." *Id.*  Importantly, and consistent with judicial decisions, the Guidance cautions that "no single factor is determinative, and that the relative importance of any of the factors will vary depending on the facts and circumstances applicable to the individual seller." *Id.*  The Guidance then provides additional insight as to each of the aforementioned factors.

B.    SSA's Potential Rulemaking

When a licensed dealer contacts NICS to perform a background check, pursuant to 18 U.S.C. § 922(t)(1), NICS determines whether § 922 prohibits the potential purchaser from

7

possessing a firearm.  *See* 28 C.F.R. § 25.2.  One reason why a potential purchaser might be prohibited from purchasing a firearm is that he or she "has been adjudicated as a mental defective or has been committed to any mental institution."  18 U.S.C. §§ 922(d)(4), (g)(4); *see also* 27 C.F.R. § 478.11 (defining "adjudicated as a mental defective" and "committed to a mental institution").  This basis for prohibition is often referred to as the "mental health prohibitor."

Seeking to "[i]ncrease mental health treatment and reporting to the background check system," the White House announced that SSA "has indicated that it will begin the rulemaking process to include information in the background check system about beneficiaries who are prohibited from possessing a firearm for mental health reasons."  *See* Fact Sheet 10.  The Fact Sheet explains:

> [SSA] has indicated that it will begin the rulemaking process to ensure that appropriate information in its records is reported to NICS.  The reporting that SSA, in consultation with the Department of Justice, is expected to require will cover appropriate records of the approximately 75,000 people each year who have a documented mental health issue, receive disability benefits, and are unable to manage those benefits because of their mental impairment, or who have been found by a state or federal court to be legally incompetent.  The rulemaking will also provide a mechanism for people to seek relief from the federal prohibition on possessing a firearm for reasons related to mental health.

*Id.*

As of the date of this motion, SSA had submitted a proposed rule to the Office of Management and Budget for review under Executive Order 12866.  *See* Office of Information and Regulatory Affairs, Executive Order Submissions Under Review, RIN: 0960-AH95, http://www.reginfo.gov/public/do/eoReviewSearch.

C.     Presidential Memorandum

Finally, the President issued a memorandum to the Attorney General, the Secretary of

Defense and the Secretary of Homeland Security urging increased research into gun safety

technologies.  *See* Presidential Memorandum 1–3.  In the Memorandum, the President explains

that "[m]illions of dollars have already been invested to support research into a broad range of

concepts for improving gun safety," adding that "[w]e must all do our part to continue to

advance this research and encourage its practical application, and it is possible to do so in a way

that makes the public safer and is consistent with the Second Amendment."   *Id.* The

Memorandum thus directs that:

> The Department of Defense, the Department of Justice, and the Department of
> Homeland Security (departments) shall, to the extent practicable and permitted by
> law, conduct or sponsor research into gun safety technology that would reduce the
> frequency of accidental discharge or unauthorized use of firearms, and improve
> the tracing of lost or stolen guns.  Not later than 90 days after the date of this
> memorandum, the Secretary of Defense, the Attorney General, and the Secretary
> of Homeland Security shall prepare jointly a report outlining a research and
> development strategy designed to expedite the real-world deployment of such
> technology for use in practice.

*Id.* at 2.  The Memorandum further orders the three Departments to regularly review the

availability of safe gun technology and to consult with other agencies that use firearms.  *Id.*  In

the final section, the President cautions that the Memorandum is not intended to impact the

authority granted to any agency or its officials; notes that the Memorandum is to be

"implemented consistent with applicable law and subject to the availability of appropriations";

and explains that the publication was "not intended to, and does not, create any right or benefit,

substantive or procedural, enforceable at law or in equity by any party against the United States,

its departments, agencies, or entities, its officers, employees, or agents, or any other person."  *Id.*

9

## II.      PROCEDURAL BACKGROUND

Plaintiff filed this suit on January 18, 2016.  Naming the United States, the President, the Attorney General, and the Head of ATF as Defendants, Plaintiff's Complaint alleges seven counts.  *First*, Plaintiff seeks a "Declaratory Judgment that Defendants' new gun control rules initiative are unconstitutional as violating the role of the President of the United States and exceeding the President's constitutional authority under the U.S. Constitution."  Compl. ¶ 85. *Second*, Plaintiff maintains that Defendants violated the APA by "announc[ing] the new gun control rules without authority and without notice-and-comment rulemaking."  *Id.* ¶ 99.  *Third*, Plaintiff claims that Defendants' "new gun control rules [are] illegal, unconstitutional, and [are] invalid agency action pursuant to 5 U.S.C. §§ [702–706]."  *Id.* ¶ 121.  Encompassed within this claim appears to be Plaintiff's assertion that the new initiatives are arbitrary and capricious.  *Id.* ¶ 123.  *Fourth*, Plaintiff contends that the initiatives must be invalidated because they are unconstitutionally vague.  *Id.* ¶ 132.  *Fifth*, Plaintiff "asks the Court to enter Declaratory Judgment that the Defendants may not restrict the rights to Americans to keep and bear arms based upon vaguely-defined mental health 'issues' rather than a judicial adjudication with full due process of mental incompetency."  *Id.* ¶ 137.  *Sixth*, Plaintiff maintains that the new initiatives offend the non-delegation doctrine.  *Id.* ¶ 140.  And *seventh*, Plaintiff asserts that the ATF Guidance violates the President's duty under the Take Care Clause of the Constitution.  *Id.* ¶ 145.  In his prayer for relief, Plaintiff requested both a preliminary and a permanent injunction. *See* ECF No. 1 at 31.

Plaintiff served his summons and complaint on the U.S. Attorney's Office on January 27 and the Attorney General on February 1.  Two days later, he filed a motion for summary judgment.  *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 8.  In that motion, Plaintiff

argues that, "[t]o the extent that the Defendants are changing the interpretation, application, and treatment of this subject matter under existing law and regulations, the departure from past practice renders the Defendants['] actions now necessarily arbitrary, capricious, and inherently unreasonable."  Pl.'s Mot. 8.  Plaintiff maintains that "Defendants' changes to the laws serve mainly to confuse and obscure what conduct will subject a person to conviction of felonies for criminal violations of the law" and are thus void for vagueness.  *Id.* at 16.  Next, Plaintiff asserts that Defendants ran afoul of the APA by not going through the notice-and-comment process.  *Id.* at 18.  Finally, Plaintiff contends that "the Defendants['] new gun control rules also violates (sic) the substantive side of the APA and the U.S. Constitution."  *Id.* at 19.

Defendants moved to stay proceedings on Plaintiff's motion for summary judgment pending the outcome of Defendants' forthcoming motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for an extension of time to respond to Plaintiff's motion.  *See* ECF No. 11.  The Court denied Defendants' motion to stay but granted the request for an extension.  *See* ECF No. 14 at 2.

## ARGUMENT

## I.   THE COURT MUST DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION.

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  First, to invoke federal jurisdiction, a plaintiff must demonstrate that he has suffered an injury-in-fact.  *Id.* at 560.  An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* Second, a plaintiff must show causation, such that his injury-in-fact is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Id.* (quoting *Simon v. E. Kentucky Welfare Rights Org.*,

426 U.S. 26, 41–42 (1976)).  Third, the injury must be redressable, which means that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be "redressed by a favorable decision." *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).

"The United States Supreme Court insists on strict compliance with the jurisdictional standing requirement and an especially rigorous standing inquiry when reaching the merits of a dispute would force a court to decide the constitutionality of an action taken by one of the other two branches of the Federal Government."  *Klayman v. Obama*, No. 15-81023-CIV, 2015 WL 5269958, at *3 (S.D. Fla. Sept. 10, 2015).  "The party invoking federal jurisdiction" — here, Mr. Klayman — "bears the burden of establishing standing."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  Thus, Plaintiff must adequately allege in his Complaint that he has standing, and by the time summary judgment motions are filed, he "must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true."  *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

APA claims are subject to an additional jurisdictional requirement: the challenged initiative must be final agency action.  The APA permits judicial review of agency action where it has been "made reviewable by statute" — and Plaintiff has not attempted to identify such a statute here — or where it is "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature.  And

second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted); *see also Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 877 (11th Cir. 2009). Absent final agency action, Plaintiff's APA claims must be dismissed for lack of subject matter jurisdiction. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).

For the reasons that follow, this Court lacks jurisdiction to consider *any* of Plaintiff's claims.

A.   The Court Cannot Exercise Jurisdiction Over Plaintiff's Challenge to the ATF Guidance.

Plaintiff lacks Article III standing to challenge the ATF Guidance because he has not adequately alleged that he has suffered or will suffer an injury-in-fact fairly traceable to that publication. *See* Compl. ¶¶ 8–9. Most fundamentally, Plaintiff fails to allege he currently is or in the future will be "engag[ed] in the business of importing, manufacturing, or dealing in firearms." 18 U.S.C. § 922(a)(1)(A). Absent such an allegation, Plaintiff cannot demonstrate that Guidance aimed at those who deal in firearms will subject him to an imminent injury-in-fact. True enough, Plaintiff has alleged that he intends to "buy, sell, trade, or gift these guns or additional guns like any other American considered about safety," Compl. ¶ 9, but that does not render him a dealer subject to the licensing requirements. A dealer "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C). Mr. Klayman has not asserted that he does any of those things. Rather, he has alleged only that he owns guns for "self defense," to keep as a "collector's item," and take measures to promote his personal "safety." Compl. ¶ 8. Activities such as purchasing firearms

for self-defense or maintaining a collection are *expressly* excluded from the statutory definition of dealer, as confirmed by the Guidance.  *See* ATF Guidance 2; 18 U.S.C. § 921(a)(21)(C) (explaining that a dealer does *not* include "person[s] who make[] occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell[] all or part of [their] personal collection of firearms").  Even assuming Plaintiff is correct, then, that the ATF Guidance alters the definition of "dealer" for the purpose of 18 U.S.C. § 922 — and, as discussed *infra*, that assertion is squarely rebutted by the text of the Guidance itself — he has not explained how the definition of "dealer" had any impact on him either before or after the Guidance issued.  Indeed, even if Plaintiff had alleged generally that he deals in firearms or would like to do so, he has not alleged with any specificity whatsoever how the *Guidance* — as opposed to the statute itself — forces him to do (or not do) anything.  In that sense, not only do Plaintiff's claims against the Guidance fail the injury-in-fact prong of the standing inquiry, Plaintiff also fails adequately to allege that any injury he has suffered is fairly traceable to the challenged Guidance.[1]

---

[1] Insofar as Plaintiff's supposed injury is an increased risk of prosecution, the Supreme Court has set a high bar for pre-enforcement challenges to criminal prohibitions, and Plaintiff cannot clear it.  In such circumstances, to demonstrate an injury-in-fact, a plaintiff must "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  Plaintiff cannot satisfy that standard.  Even setting to the side whether conduct proscribed by the statute is arguably affected with a constitutional interest, Plaintiff has set forth no allegations indicating that he intends to sell firearms "with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms," 18 U.S.C. § 921(a)(21)(C).  The conduct Plaintiff has alleged he *does* intend to undertake — acquiring firearms for the purpose of collecting and self-defense — is not proscribed by the statute.  Moreover, because Plaintiff has pointed to no "past enforcement against the same conduct," *Susan B. Anthony List*, 134 S. Ct. at 2345, he cannot claim a credible threat of prosecution, either under the statute generally or specifically pursuant to the ATF Guidance.

14

Plaintiff's procedural APA claim, *see* Compl. ¶ 94, is not immunized from the ordinary injury-in-fact requirements.   That is, to claim that ATF violated 5 U.S.C. § 553 by not promulgating the Guidance through notice-and-comment rulemaking, Plaintiff must show "*both* (1) that [his] procedural right has been violated, *and* (2) that the violation of that right has resulted in an invasion of [his] concrete and particularized interest."   *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159 (D.C. Cir. 2005); *see also Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996); *Sierra Club v. Johnson*, 436 F.3d 1269, 1278 (11th Cir. 2006).   "In other words, while [courts] relax the imminence and redressability requirements, the procedural-rights plaintiff must still satisfy the general requirements of the constitutional standards of particularized injury and causation."   *Ctr. for Law & Educ.*, 396 F.3d at 1159.   Here, for the reasons just set forth, Plaintiff has "fail[ed] to demonstrate how [he] suffer[s] actual injury to a concrete, particularized interest, caused by the challenged conduct," *i.e.*, the ATF Guidance.   *Id.*   Consequently, even if he could show that a procedural right had been violated — and, as discussed *infra* at 24–28, he cannot show that ATF was required to undertake notice-and-comment rulemaking — he would still lack Article III standing.

The Court also lacks subject matter jurisdiction to consider Plaintiff's APA challenges to the ATF Guidance, *see* Compl. ¶¶ 94, 121, for the additional reason that the ATF Guidance is not final agency action.   First, the Guidance is not "agency action . . . [by] which rights or obligations have been determined or from which legal consequences will flow."   *Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236, 1248 (11th Cir. 2003).   The Guidance sets forth that it "is intended to help you determine whether you need to be licensed under federal law," and no more.   ATF Guidance ii.   *See Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252–53 (D.C. Cir. 2014) (finding Guidance did not fix rights or obligations where it "repeatedly state[d] that it

'does not impose legally binding requirements'"). In this way, the Guidance does not read like a "ukase" or give anyone "their 'marching orders.'" *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000). Likewise, looking to "the agency's [own] characterization of the guidance," *Nat'l Min. Ass'n*, 758 F.3d at 252, ATF on the inside cover of the Guidance disclaims that the publication has any legal effect, stating: "The guidance set forth herein has no regulatory effect and is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding, *see United States v. Caceres*, 440 U.S. 741 (1979)."

The Guidance does not itself determine any legal rights or obligations because it reflects and relies upon judicial opinions construing the relevant statutory provisions rather than setting forth its own novel interpretations of the law. The Guidance starts by summarizing the existing "legal framework," which it does by and large by quoting the statutory text. ATF Guidance 2. In a section unmistakably labeled "Factors Identified by Federal Courts," *id.*, the Guidance then proceeds to review the manner in which federal courts have construed § 922(a)(1)(A).

For instance, the ATF Guidance begins by explaining that "[f]ederal law does not establish a 'bright-line rule.'" ATF Guidance 4. That statement tracks language from a recent Fifth Circuit decision. *See United States v. Brenner*, 481 F. App'x 124, 127 (5th Cir. 2012) ("Needless to say, in determining the character and intent of firearms transactions, the jury must examine all circumstances surrounding the transaction, without the aid of a bright-line rule.") (citation omitted). With respect to repetitive purchases and sales of firearms, the Guidance indicates that "there is no specific threshold number of firearms purchased or sold that triggers the licensure requirement," and that "there is no 'magic number' related to the frequency of transactions that indicates whether a person is 'engaged in the business' of dealing in firearms.'" ATF Guidance 5. That information is likewise derived from judicial interpretations of § 922.

16

*See United States v. Carter*, 801 F.2d 78, 81–82 (2d Cir. 1986) ("Nor is there a 'magic number' of sales that need be specifically proven."); *United States v. Nadirashvili*, 655 F.3d 114, 119–20 (2d Cir.) (same), *on reh'g in part sub nom. United States v. Spies*, 661 F.3d 1158 (2d Cir. 2011); *United States v. Gray*, 470 F. App'x 468, 473 (6th Cir. 2012) ("[T]he statute does not establish a minimum threshold for the number of guns sold."); *see also United States v. Ortiz-Zayas*, 110 F. App'x 181, 182 (2d Cir. 2004) (suggesting district court did not err in instructing jury that there is no "magic number that has to be established, number of firearms purchased that must be proven.").

In like fashion, the Guidance observes "courts have looked at both the quantity of firearms sold, as well as the frequency of sales, as relevant indicators."  ATF Guidance 5. *Cf. Brenner*, 481 F. App'x at 127 ("Relevant circumstances include: 'the quantity and frequency of sales . . . '").  Similarly, with respect to whether an alleged dealer is making a profit, the Guidance offers that, "[b]ecause the key is *intent* or *objective*, the courts have made clear that a person can be 'engaged in the business' of dealing in firearms without actually making a profit." ATF Guidance 5.  *Cf. United States v. Wilmoth*, 636 F.2d 123, 125 (5th Cir. 1981) ("However, [the government] need not prove that . . . [defendant] necessarily made a profit from dealing."); *United States v. Valdes*, No. 12-80234-CR, 2013 WL 5561131, at *4 (S.D. Fla. Oct. 4, 2013) (Middlebrooks, J.).  Rather, the ATF Guidance explains that, "[i]n determining that intent or objective, courts have looked to prices that an unlicensed seller charges for firearms to determine if the principal objective of the seller is livelihood and profit."  ATF Guidance 5.  *Cf.  United States v. Tyson*, 653 F.3d 192, 201 (3d Cir. 2011) ("Although the quantity and frequency of sales are obviously a central concern, so also [is] . . . the price charged for the weapons . . . .").  And, the Guidance cautions that "courts have found that you can buy and sell firearms 'with the

principal objective of livelihood and profit' even if your firearm-related activities are not your primary business."  ATF Guidance 6.  *Cf. United States v. Beecham*, 993 F.2d 1539 (4th Cir. 1993) ("The government need not prove that a defendant's 'primary business' was dealing in firearms . . . "), *aff'd*, 511 U.S. 368 (1994); *Carter*, 801 F.2d at 81–82 (same); *Wilmoth*, 636 F.2d at 125 (same).

Consequently, it is the statute itself and the decisions construing it that establish the binding legal norm, not the ATF Guidance.  The Guidance "simply restate[s] [individuals'] obligations under longstanding federal firearms laws.  Even if the ATF had not [issued the publication], [the public] would still have been required to comply with those federal firearms laws."  *Montana Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *6 (D. Mont. Aug. 31, 2010), *report and recommendation adopted*, No. CV 09-147-M-DWM-JCL, 2010 WL 3909431 (D. Mont. Sept. 29, 2010).  To be sure, the Guidance "informs the regulated community of the ATF's conclusion" about what "violates the law," but the Guidance "does not itself *determine* the law or the consequences of not following it.  Its role, as stated in the publication, is simply to *inform* licensees of what the law, previously enacted or adopted, is, and its publication did not itself alter the legal landscape."  *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432–33 (4th Cir. 2010).[2]

Not only does the ATF Guidance not alter legal rights or obligations, it also is not the consummation of the agency's decisionmaking process.   In fact, other courts that have

---

[2] Further underscoring the conclusion that the ATF Guidance does not carry force of law, and thus is not final agency action, is that a federal prosecutor's interpretation of a criminal statute would not be entitled to deference under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).  *See Abramski*, 134 S. Ct. at 2274  (stating, in construing Gun Control Act provision, that "criminal laws are for courts, not the Government, to construe"); *United States v. Apel*, 134 S. Ct. 1144, 1151 (2014) ("[W]e have never held that the Government's reading of a criminal statute is entitled to any deference.").

encountered an agency document setting forth preexisting legal norms have concluded that the agency engaged in no decisionmaking process whatsoever.  In *Montana Shooting Sports*, 2010 WL 3926029, at *6, the court concluded that an ATF letter explaining an individual's obligations under federal law did not "mark[] the consummation of the ATF's decisionmaking process," because, "[i]n fact, there is nothing to suggest that the ATF engaged in any decisionmaking process at all," as "[t]he letter simply restate[d]s the requirements of federal firearms laws."  *Id.* In *Golden & Zimmerman*, 599 F.3d at 432, the Fourth Circuit, considering an APA challenge to a Frequently Asked Question in an ATF reference guide, concluded there had been "no decisionmaking process that culminated in the publication of the Reference Guide," because the FAQ *at most* restated an ATF interpretation set forth forty years earlier.  *Id.*  So too here: because the ATF Guidance set forth judicial interpretations of § 922, it does not mark the consummation of an agency decisionmaking process.[3]

   B.   Plaintiff Has Shown No Injury-in-Fact Fairly Traceable to the Future SSA Rule.

   At least until SSA has promulgated a final rule, it is not possible for Plaintiff to demonstrate that he might be injured by it in such a way as to confer standing.  It certainly cannot be the case that Plaintiff has already suffered an actual injury and, *at least* until the rule's content is known, Plaintiff cannot show "a real and immediate threat of future injury."  *Houston*

---

[3] In fact, for that very reason, the ATF Guidance likely is not agency action at all within the meaning of the APA, pursuant to which Plaintiff brings his claims, let alone final agency action.  Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  In *Golden & Zimmerman*, the Fourth Circuit found no agency action whatsoever because the ATF FAQ, as "a statement by an agency that simply restates an established interpretation," "'tread[s] no new ground' and 'le[aves] the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy.'"  599 F.3d at 432 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (Roberts, J.)).  Because the ATF Guidance at issue restates judicial holdings, the same is true here.

*v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). Even examining the broad contours of the potential rule outlined in the January 2016 announcement, Plaintiff has alleged neither that he suffers from a mental health "issue," nor that he receives Social Security Disability payments, and therefore it is entirely unclear how the rule will possibly impact him at all. The Eleventh Circuit has made clear that, where "Plaintiff[] fail[s] to characterize their future injury in any way," rendering it "entirely speculative" whether the challenged policy will impact the plaintiff, courts are "asked to perform the judicial equivalent of shooting blanks in the night," and it has instructed that, "[c]onsistent with [the] obligation to adjudicate only a live case or controversy, [courts should] refuse to pull the trigger." *Elend v. Basham*, 471 F.3d 1199, 1206–07 (11th Cir. 2006). This Court should heed that advice and conclude that Plaintiff lacks Article III standing.[4]

The future SSA rule is also not final agency action, depriving this Court of jurisdiction to consider Plaintiff's APA challenges to it. To describe the second executive action challenged by Plaintiff — the announcement that SSA will begin the administrative rulemaking process under the APA — is to demonstrate it is not final agency action. In fact, there is no agency action at all. As explained above, agency action "includes the whole or a part of an agency rule, order,

---

[4] Plaintiff says in passing that "Defendants now encourage all medical professionals to report their patients who exhibit any poorly-defined mental health 'issues' and are working to change the professional rules within those professions to both endorse and require such reports." Compl. ¶ 67. To the extent this constitutes a challenge not to the future SSA rule, but to an HHS Final Rule, *see* 45 C.F.R. § 164.512, Plaintiff likewise lacks standing. *See* ECF No. 8-7 (attaching rule as an exhibit to motion for summary judgment, but never expressly referencing it or even citing it). The HHS rule allows "certain HIPAA covered entities to disclose to the [NICS] the identities of individuals who are subject to a Federal 'mental health prohibitor,'" *Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule and the National Instant Criminal Background Check System (NICS)*, 81 Fed. Reg. 382-01 (2016). Not only has Plaintiff failed, as discussed above, to allege that he is subject to a mental health prohibitor, he has made no attempt to demonstrate that he has been treated by a HIPAA covered entity that has, or likely will, provide Plaintiff's name to the NICS.

license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13), and the APA defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," *id.* § 551(4).   The announcement of a future rulemaking proceeding does not "implement, interpret, or prescribe law or policy."   *Id.*   "[T]he agency has not yet made any determination or issued any order imposing any obligation . . . , denying any right . . . , or fixing any legal relationship," *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003), and thus its announcement cannot be considered agency action.

Indeed, actions far further along than the mere announcement of a future rule have been held not "final" agency action.  *See In re Murray Energy Corp.*, 788 F.3d 330, 333-34 (D.C. Cir. 2015) (declining to hear challenge to *proposed* EPA rule); *P & V Enterprises v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008) (concluding that an advanced notice of proposed rulemaking and a press release did not constitute final agency action reopening a stale rule); *Nat'l Parks Conservation*, 324 F.3d at 1238 (no final agency action where "one of the four proposed management alternatives will soon be selected and implemented"); *City of San Diego v. Whitman*, 242 F.3d 1097, 1101 (9th Cir. 2001) (holding that an EPA opinion letter did not constitute final agency action with respect to the appellant's then-unfiled application for renewal of a modified National Pollutant Discharge Elimination System permit, because there were several administrative steps that necessarily would be taken before the application, once filed, would be conclusively approved or denied); *Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1198 (10th Cir. 1999) (holding that a United States Minerals Management Service letter did not represent "final agency action" because it "served only to

initiate further proceedings by which the MMS could [conclusively] determine whether Plaintiffs owed royalties"); *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983) ("[T]he issuance of a notice of proposed rulemaking, or other preliminary proceedings undertaken to promote a proposed rule, often will not be ripe for review because the rule may or may not be adopted or enforced."); *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 14 (D.D.C. 2014) ("[T]he Court doubts that any challenge to the Proposed Rule would be ripe for judicial review."); *Media Gen. Operations Inc. v. Herman*, 152 F. Supp. 2d 1368, 1374 (S.D. Ga. 2001) ("But the mere *initiation* of an investigation does not constitute final agency action.").

The reason for the finality requirement forcefully applies here.  "Judicial review at th[is] stage improperly intrudes into the agency's decisionmaking process.  It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Reliable Automatic Sprinkler*, 324 F.3d at 732.  For that reason, until a final rule actually issues, there has been no consummation of the agency's decisionmaking process and no legal rights or obligations are determined.

C.    The Court Cannot Consider Plaintiff's Challenge to the Presidential Memorandum.

With respect to the Presidential Memorandum, Plaintiff cannot (and has not even attempted) to explain how his interest in "own[ing]," carry[ing]," "buy[ing]," or "sell[ing]," firearms has been or imminently will be curtailed by the President directing three executive agencies to research safe gun technology.  The closest he comes is to allege that such technology "*could* enable the government, *perhaps* under a *future* president, to remotely disable all firearms owned by the people" or "*could* allow a tyrannical government to remotely turn off all the firearms in the country . . . equipped" with "a computer chip inside the firearm."  Compl. ¶ 77

22

(emphases added).  Such rank speculation fails to satisfy the burden of showing that the President's memorandum causes him imminent injury in fact.

Moreover, the Court cannot entertain an APA challenge to the Presidential Memorandum.  As its name indicates, the Presidential Memorandum was written and issued by the President, and the Supreme Court has squarely held that the President is not an "agency" and his actions are not subject to the APA.  *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("[W]e hold that [the President's actions] are not reviewable for abuse of discretion under the APA."); *see also* 5 U.S.C. § 551(1).  Even were that not so, Plaintiff's APA challenge to the Presidential Memorandum would fail.  The Memorandum is not agency action, because it is not "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Nor is it "final," as it determines no rights or obligations.  *See* Presidential Memorandum § 3 ("This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.").  This Court therefore lacks jurisdiction to consider Plaintiff's APA claims regarding the Memorandum.[5]

---

[5] A further reason why the Presidential Memorandum is unreviewable by this Court is that it directs the agencies to conduct research within the scope of what is possible under existing appropriations, and "[t]he allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion."  *Lincoln v. Vigil*, 508 U.S. 182, 192–93 (1993); *see also* 5 U.S.C. § 701(a)(2) (making unreviewable agency action that "is committed to agency discretion by law").

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND PLAINTIFF'S MOTION SHOULD BE DENIED.

### A.   Plaintiff Has Not Tried, Much Less Succeeded, To Meet His Burden to Show That He Has Standing.

At the outset, it warrants emphasizing that, even if the Court were to deny Defendants' motion to dismiss for lack of standing, it should nonetheless grant summary judgment to Defendants on that basis.  As noted above, each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  Thus, by the time motions for summary judgment are filed, Plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)).  Plaintiff has not even attempted to put forth evidence that would satisfy his burden to demonstrate standing. Even his Statement of Undisputed Material Facts fails to cite to any evidence in the record, as opposed to mere speculation, from which the Court could conclude that Plaintiff has suffered an injury in fact.

### B.   Plaintiff's Procedural and Substantive APA Claims Are Unavailing.

#### 1.   *Plaintiff's Procedural APA Challenges Are Without Merit.*

Contrary to Plaintiff's claims, Defendants have not violated the APA's procedural rules. *See* Compl. ¶¶ 94–120 (challenging ATF Guidance as a procedural violation of the APA).  "The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule.'" *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (quoting 5 U.S.C. § 551(5)).  However, "[n]ot all 'rules' must be issued through the notice-and-comment process."  *Perez*, 135 S. Ct. at 1203–04 (quoting 5 U.S.C. § 553(b)(A)).  Legislative rules must undergo notice-and-comment, but "Section 4(b)(A)

of the APA provides that, unless another statute states otherwise, the notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Perez*, 135 S. Ct. at 1203–04 (quoting 5 U.S.C. § 553(b)(A)).  If an agency initiative is not final agency action within the meaning of the APA, it cannot be a legislative rule.  *Compare Nat'l Min. Ass'n v. Sec'y of Labor*, 589 F.3d 1368, 1371 (11th Cir. 2009) (setting forth factors for use in determining whether rule is legislative in nature), *with Bennett*, 520 U.S. at 177 (explicating similar standard for final agency action); *Nat'l Parks Conservation*, 324 F.3d at 1238 (same).  *See also Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) ("In litigation over guidance documents, the finality inquiry is often framed as the question of whether the challenged agency action is best understood as a non-binding action, like a policy statement or interpretive rule, or a binding legislative rule."); *Nat'l Min. Ass'n*, 758 F.3d at 251–52; *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807 (D.C. Cir. 2006).  As set forth above, the ATF Guidance at issue here does not bind the public, instead explicating relevant judicial decisions, and therefore is not "final."  Consequently, it cannot be characterized as a legislative rule subject to notice-and-comment rulemaking.

Plaintiff's contentions to the contrary can swiftly be dispatched.  With regard to the notion that "[t]his exact question has been decided by *Texas v. United States*," *see* Pl.'s Mot. 18, as in initial matter, Defendants respectfully suggest that *Texas* was wrongly decided, *see* Cert. Pet., *United States v. Texas*, 2015 WL 7308179 (U.S. 2015), and ought not be the basis for this Court's decision while under review by the Supreme Court.[6]  At any rate, it should suffice to

---

[6] On the subject of *Texas*, Plaintiff wrongly suggests that, because the Eleventh Circuit and the Fifth Circuit "share[] a common history," *Texas v. United States* "comes very close to

point out that the Fifth Circuit's decision in that case was partly contingent on its view that the policy at issue modified substantive rights. *Texas v. United States*, 809 F.3d 134, 176 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *cert. granted*, 136 S. Ct. 906 (2016). Here, by contrast, the ATF Guidance is itself very clear that it is not intended to function as anything more than a general recitation of prior judicial interpretations of 18 U.S.C. § 922 that does not create any independent rights or obligations and Plaintiff has not pointed to anything that indicates otherwise.

Insofar as the arguments Plaintiff has advanced in his Complaint only by way of citations and parentheticals devoid of elaboration are even properly before the Court, *see* Compl. ¶¶ 94–120, they lack merit. *See, e.g.*, *Van Vechten v. Elenson*, No. 12-80668-CIV, 2013 WL 3776273, at *1 (S.D. Fla. July 17, 2013) ("Parties cannot come into federal court and throw out issues, leaving it to the district court to flesh out the details."); *Johnson v. Astrue*, No. CIV.A. 1:08CV908-WC, 2009 WL 3586599, at *3 (M.D. Ala. Oct. 27, 2009) ("It is the job of Plaintiff to present arguments on [his or her] own behalf, not the [Defendant's]."). First, Plaintiff urges that "Defendants ordered the ATF to apply a *new and different* interpretation of who is a 'dealer'" for purposes of § 922, *see* Compl. ¶ 54 (emphasis added); *see also id.* ¶ 130 ("That is, if the previously promulgated regulations were well grounded in law and fact, then a dramatic departure from those regulations most likely cannot also be well grounded in law and fact."). That argument is wrong factually and irrelevant legally. Plaintiff's contention is incorrect as a

---

this Circuit already having decided that the Defendants' new gun control rules here, now, are likewise illegal for the same reasons." Pl.'s Mot. 7. "Decisions of the Fifth Circuit *prior to* the Eleventh Circuit's split from the Fifth Circuit are binding on the Eleventh Circuit." *United States v. Dean*, 604 F.3d 1275, 1279 n.1 (11th Cir. 2010) (emphasis added). Plaintiff does not, because he cannot, offer any support for the proposition that the same is true of decisions that postdate the split.

factual matter because, as set forth above, the ATF Guidance quotes the relevant — and unchanged — statutory and regulatory language and synthesizes judicial decisions and thus cannot be said to contradict any prior interpretation of the law.  Importantly, Plaintiff never tells the Court exactly how, in his view, the Guidance changes the law.  Plaintiff's assertion is also irrelevant as a legal matter because the Supreme Court recently rejected the proposition that, where an interpretive rule is inconsistent with an agency's earlier interpretation, it must go through the notice-and-comment process.  *Perez*, 135 S. Ct. at 1207.

> 2.    *Plaintiff Cannot Establish That The ATF Guidance Is Arbitrary and Capricious or Otherwise a Substantive APA Violation.*

Plaintiff's substantive APA arguments are no more persuasive.  Plaintiff takes great pains to convince the Court that the ATF Guidance institutes a rule of law contrary to that set forth by Congress, *see, e.g.*, Pl.'s Mot. 19 ("[T]he APA requires substantive fidelity to the Constitution and the governing Congressional enactments."); Compl. ¶ 125 ("Defendants' orders take away legal rights for millions of would-be gun owners.  And it does so by rewriting the laws and contradicting the priorities adopted by Congress.").  But Plaintiff *never* explains how: he never elaborates upon how exactly he (or anyone else) was not required to obtain a Federal Firearms License *prior* to the Guidance's issuance but now must do so because of that publication. Plaintiff's insinuation that the Guidance conflicts with the Second Amendment suffers from a similar lack of explanation, but would fail in any event because the Guidance merely reiterates judicial decisions construing relevant statutory language.

Finally, to the extent Plaintiff's APA argument is that the ATF Guidance is arbitrary and capricious, "the party challenging an agency's action as arbitrary and capricious bears the burden of proof."  *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).   The arbitrary-and-capricious standard of review "is

exceedingly deferential." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). A court may not "substitute its judgment for that of the agency," and ultimately may reverse only if the agency has committed "a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Plaintiff's only argument as to why the Guidance is arbitrary and capricious is that it works a change in the law — what sort of change, he never says — but as explicated at length above, that simply is not so. Rather, given the narrow scope of judicial review and because the Guidance comports with and relies on established law when setting forth the activities that require a dealer's license, the Guidance is not arbitrary and capricious.

C.     None of the Initiatives Challenged Here Exceeds the Executive's Authority.

Plaintiff makes a series of arguments that, although not explicated with any real clarity, seem to boil down to the contention that the President lacked the authority to undertake the three initiatives here at issue. First, the Complaint's first cause of action is captioned: "Declaratory Judgment Obama's Ultra Vires Under the U.S. Constitution." *See* Compl. ¶¶ 85–94. Plaintiff's basic contention there is that "Defendants' new gun control rules initiative are (sic) unconstitutional as violating the role of the President of the United States and exceeding the President's constitutional authority under the U.S. Constitution." *Id.* ¶ 85. Similarly, Plaintiff's sixth cause of action alleges a violation of the non-delegation doctrine, contending that "[t]he sweeping power claimed by Defendant Obama and the other Defendants is an unlimited, unbridled power without the guidance of any intelligible principle guiding the exercise of the delegated power." *Id.* ¶ 143. And, Plaintiff's substantive APA challenge at least in part seems to assert that the agency has overstepped its bounds, *see id.* ¶¶ 121–31. None of these contentions has merit.

The ATF Guidance is squarely within the parameters of executive authority.  First, the ATF manifestly has the constitutional authority to issue a document summarizing the manner in which federal courts have construed a criminal statute.  *Cf.* 5 U.S.C. § 553(b) (explicitly acknowledging power of agency to issue interpretive rules and general statements of policy). This is especially so in light of Congress's express delegation to the Attorney General of authority over the administration of Title 18, *see* 18 U.S.C. § 847, as well as the broad prosecutorial discretion enjoyed by the Executive Branch.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  Likewise, because the ATF Guidance sets forth principles of law enacted by Congress and interpreted by the judicial branch, and does not itself impose new rights or obligations, the Executive Branch has not acted as "a legislature," did not exercise "law-making powers," and has not "usurp[ed] the power of the U.S. Congress."  Pl.'s Mot. 19.  That the Guidance does not have force of law is also sufficient to forestall Plaintiff's non-delegation doctrine claim.  *Cf. Touby v. United States*, 500 U.S. 160, 165–66 (1991); *Mistretta v. United States*, 488 U.S. 361, 374 (1989).

Plaintiff's contention that Defendants overstepped the bounds of their authority with respect to the future SSA rule is even more without merit.  It simply cannot be the case that the SSA — not a named Defendant here — exceeded its statutory authorization by announcing that it plans to promulgate a rule at some point in the future.  Nor has Plaintiff exerted any effort to show how such a rule would violate the non-delegation doctrine.  *See, e.g.*, Pl.'s Br. 2, 7; Compl. ¶¶ 142–43.  As to the Presidential Memorandum, neither the Complaint nor Plaintiff's motion for summary judgment even hints at a challenge on these grounds, and so it should be assumed that

none exists.  In short, the Court should enter summary judgment for Defendants, and deny Plaintiff's motion for summary judgment, as to his first, third, and sixth causes of action.

        D.     <u>Plaintiff's Facial Void-for-Vagueness Challenge is Procedurally Improper and, in Any Event, Entirely Without Merit.</u>

Plaintiff contends that the ATF Guidance explaining judicial interpretations of that statute, as well as the future SSA rule, must be declared void for vagueness, *see* Compl. ¶¶ 132–36.  That argument must be rejected, and summary judgment on such claims must be entered for Defendants, because "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."  *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *see also United States v. Esquenazi*, 752 F.3d 912, 929 (11th Cir. 2014) (recognizing "nonspeech vagueness challenges are only cognizable as applied"), *cert. denied*, 135 S. Ct. 293 (2014); *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) ("If a vagueness challenge to a statute does not involve the First Amendment, the analysis must be as applied to the facts of the case."); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (holding that challenge to conditions imposed upon federal firearms license applicants must fail because, outside of the first amendment context, vagueness challenges may only be presented as applied).  Neither the ATF Guidance nor the yet-to-be-promulgated SSA rule has been enforced (or credibly threatened to be enforced) against Plaintiff, and it is therefore not possible, as the Supreme Court has instructed, to "examine[]" Plaintiff's challenge "in light of the facts of the case at hand." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  Summary judgment must be granted to Defendants.[7]

---

      [7] The (scant) arguments Plaintiff presents in his motion for summary judgment are thus beside the point, but even if they were not, they miss the mark.  Beyond explaining the basic

E.      This Court Cannot Review the President's Compliance With the Take Care Clause, but Even if it Could, No Violation Has Occurred Here.

Plaintiff's Take Care Clause claim is non-justiciable and, in any event, unavailing.  *See* Compl. ¶¶ 144–52.  Article II, Section 3, of the Constitution requires that "[the Executive] shall take Care that the Laws be faithfully executed."  Initially, it warrants mentioning that, contrary to Plaintiff's assertion that, in *Texas*, "the Fifth Circuit found that the exact same so-called 'executive actions' . . . violated the Constitutional requirement that the president take care that the laws be faithfully executed," Pl.'s Mot. 7, that decision held no such thing.  Rather, in a footnote appended to the very first paragraph of its opinion, the Fifth Circuit stated: "We find it unnecessary, at this early stage of the proceedings, to address or decide the challenge based on the Take Care Clause."  *Texas*, 809 F.3d at 146 n.3.

Regardless, there are numerous bases on which to grant summary judgment for Defendants.  First, Plaintiff's Take Care Clause challenge is duplicative of his other claims.  That is, if the actions challenged here withstand Plaintiff's APA and constitutional challenges, they cannot be said to violate the Executive Branch's Take Care Clause obligations.  Alternately,

---

contours of the void-for-vagueness doctrine, *see* Pl.'s Mot. 16–17 (citing, e.g., *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009)), Plaintiff contends only that "[t]he Defendants' spokesman, Press Secretary Josh Earnest . . . admitted that no public, official documents have been issued, SUMF ¶ 12, so that the public has no specific, official document to look to to even attempt to understand what conduct will be permissible."  *Id.*  With respect to the ATF Guidance, not only is Plaintiff wrong as a factual matter, but his assertion is plainly belied by his own motion for summary judgment, to which Plaintiff attached the very document that he claims is not publicly available.  *See* ECF No. 8-5 (submitting ATF Guidance to the Court).  As to the future SSA rule, Defendants admit that no public document has been issued, because the rule is still in its earliest stages, which should serve to further underscore that Plaintiff's claim suffers from numerous justiciability flaws.  Finally, Plaintiff has made no attempt whatsoever to demonstrate how either the ATF Guidance or the Future SSA Rule fails to "define [a] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  That too is sufficient reason to deny Plaintiff's Motion for Summary Judgment.

Plaintiff succeeding on any of his other causes of action would be sufficient to afford him relief and reaching the Take Care Clause question would accordingly be unnecessary.

At any rate, the Supreme Court has acknowledged that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1867). Thus, this Court undertaking such an inquiry would express a "lack of the respect due" to the Nation's highest elected official, *Baker v. Carr*, 369 U.S. 186, 217 (1962), by assuming judicial superintendence over the exercise of Executive power that the Clause commits to the President. In fact, Plaintiff has no cause of action to raise such a claim, because neither the APA nor the Take Care Clause itself furnishes a right to sue to challenge a putative Take Care Clause violation. *See Franklin*, 505 U.S. at 796; *cf. Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383–84 (2015). In any event, by synthesizing for the public and law enforcement alike the judiciary's prevailing views of 18 U.S.C. § 922, Defendants have acted consistently with their Take Care Clause obligations.

F.   Plaintiff Has Failed Adequately to Present His Claim that Defendants Have Denied Second Amendment Rights Without Due Process of Law.

With respect to Plaintiff's final cause of action, alleging that Defendants deny Second Amendment rights without providing due process, *see* Compl. ¶¶ 137–39, Defendants simply point the Court toward their justiciability arguments. Plaintiff has challenged a rule that does not yet exist; adjudication on the merits is therefore not possible. Nor has Plaintiff identified a single instance of him (or anyone else) actually being denied the exercise of their Second Amendment rights. In any event, beyond cursory assertions that "Defendants ordered the ATF, Social Security Administration, and other agencies to change their enforcement, implementation and interpretation of these statutes to strip the Plaintiff and other U.S. citizens of their rights of due

process by judicial proceedings," Pl.'s Br. 11, Plaintiff has offered no *explanation* as to what has

in fact changed and no *argument* as to why summary judgment in his favor is proper, and his

motion should be denied for that reason.  *See Van Vechten*, 2013 WL 3776273, at *1 ("Issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not sufficient for a party to mention a possible argument in the most

skeletal way, leaving the court to put flesh on its bones." (internal citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint for lack of

subject matter jurisdiction or, in the alternative, it should grant Defendants' motion for summary

judgment and deny Plaintiff's motion for summary judgment.

DATED: March 28, 2016                   Respectfully submitted,

                                        BENJAMIN C. MIZER
                                        Principal Deputy Assistant Attorney General

                                        WIFREDO A. FERRER
                                        U.S. Attorney

                                        JOHN R. TYLER
                                        Assistant Director, Federal Programs Branch

                                        __/s/ Bailey W. Heaps__
                                        BAILEY W. HEAPS (CA Bar No. 295870)
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Avenue NW
                                        Washington, D.C. 20530
                                        Telephone: (202) 514-1280
                                        Facsimile: (202) 616-8470
                                        Bailey.W.Heaps@usdoj.gov

                                        *Counsel for Defendants*