## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Palm Beach Division

LARRY KLAYMAN

                Plaintiff,

    v.

BARACK OBAMA, President,

        and

THOMAS E. BRANDON, Deputy Director of the
U.S. Department of Justice, Head of the Bureau of
Alcohol, Tobacco and Firearms,

        and

LORETTA LYNCH, U.S. Attorney General,

        and

THE UNITED STATES OF AMERICA

            Defendants.

Case No. 9:16-cv-80087-
CIV-MIDDLEBROOKS

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Larry Klayman, Esq.
FL Bar No. 246220
7050 W Palmetto Park Road, Unit 15-287
Boca Raton, Florida 33433
Telephone:  (310) 595-0800
E-mail:  leklayman@gmail.com

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY ................................................................................ 2

GOVERNING STANDARD OF LAW ......................................................................... 4

ARGUMENT ............................................................................................................... 5

  Plaintiff has Standing to bring this Challenge.............................................................. 5

    Plaintiff has Suffered a Cognizable Injury in Fact.................................................. 6

    Plaintiff Alleged that the Injury was Directly and Proximately Caused by Defendants........ 7

    Plaintiff's Injury is Redressable .............................................................................. 7

  Defendants Change the Law by Changing Definition of "Dealer" in Violation of Procedural Requirements of the APA ............................................................................................ 7

    Defendants Have Substantively Changed the Rights of Plaintiff, and numerous others, by changing the definition of the term "dealer"................................................................ 8

    Defendants' Own Statements Indicate that They Intended to, and Have Changed the Law................................................................................................................. 10

    Because Defendants Changed the Substantive Rights of Plaintiff and Numerous Others by Way of Regulation, Without Abiding by the Proper Rule-Making Procedure, Defendants' Action is Unlawful ................................................................................................ 11

  Defendants' New Gun Control Executive Orders Violate Substantive APA Requirements................................................................................................................ 12

  Defendants' New Gun Control Executive Orders Exceed the Scope of Executive Authority . 13

  New Gun Control Executive Orders Are Subjective and Void for Vagueness........................ 14

  Declaratory Judgment: Violation of Non-Delegation Doctrine ................................. 16

  Violation of President's Duty to Take Care that Laws Are Executed  ..................... 17

  CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................... 4, 5

*Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293 (1945) ................... 16, 17, 18

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ........................................... 9

*Barrick Goldstrike Mines Inc. v.Browner*, 215 F.3d 45 (D.C. Cir. 2000) ................................ 8

*Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986) ................................................................. 5

*Chamber of Commerce v. DOL*, 174 F.3d 206 (D.C. Cir. 1999) .......................................... 10

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) ........................................................ 13

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ................................................................... 9

*Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009) ........................................................... 9

*Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995) ............................................................ 4

*Dickens v. Whole Foods Market Group, Inc.*, 2003 U.S. Dist. LEXIS 11791, 2003 WL 21486821
................................................................................................................................. 5

*General Elec. Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002) ................................................... 9

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ............................................................ 15

*Hearth, Patio & Barbecue Ass'n v. U.S. Dept. of Energy*, 706 F.3d 499 (D.C. Cir. 2013) .......... 13

*Hickson Corp., v. Northern Crossarm Co., Inc.*, 357 F.3d 1256 (11th Cir. 2004) ...................... 5

*Johnson v. United States*, 135 S. Ct. 2551 (June 26, 2015) ................................................. 16

*Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1838) ................................................. 16, 17

*Londrigan v. FBI*, 670 F.2d 1164, (D.C. Cir. 1981) ........................................................... 5

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) ............................................................. 5, 6

*Medellin v. Texas*, 552 U.S. 491 (2008) ......................................................................... 17

*Nat'l Pork Producers Council v. EPA*, 635 F.3d 738  (5th Cir. 2011) ...................................... 8

*NRDC v. EPA*, 643 F.3d 311 (D.C. Cir. 2011) ................................................................... 8

*Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859 (D.C. Cir. 1989) ............... 5

*Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) ............................................... 6

*Texas v. United States*, 809 F.3d 134 (5th Cir. Tex. 2015) ............................................... 7, 8

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Jackson, J., concurring) .......... 17

**Statutes**

5 U.S.C. § 551(1) ...................................................................................................... 3

5 U.S.C. § 551(4) ...................................................................................................... 3

5 U.S.C. § 553 ..................................................................................................... 3, 12

5 U.S.C. § 706(2) ..................................................................................................... 12

5 U.S.C. § 706(2)(a). ................................................................................................ 13

5 U.S.C. § 706(2)(D) ................................................................................................ 12

Administrative Procedure Act ........................................................... 3, 6, 7, 8, 9, 12

Gun Control Act of 1968 (as amended), Title 18, Chapter 44, § 922 ................................... 14

Title I, State Firearms Control Assistance (18 U.S.C. Chapter 44), of the Gun Control Act of
1968 (82 Stat. 1213) ............................................................................................ 14

**Rules**

Federal Rules of Civil Procedure (FRCP) Rule 12(b)(6) ...................................................... 2

Federal Rules of Civil Procedure (FRCP) Rule 56 ......................................................... 2, 4, 5

Federal Rules of Evidence ("Fed.R.Evid.") Rule  801(d)(2) .............................................. 15

**Regulations**

27 C.F.R. 478.32 ................................................................................................................. 14

28 C.F.R. 25 ...................................................................................................................... 14

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

The Plaintiff respectfully requests that the Court deny the Defendants' Motion for

Summary Judgment for the reasons set forth in his Memorandum of Law incorporated below.

Dated: April 27, 2016                          Respectfully submitted,

                                                 _/s/ Larry Klayman_
                                               Larry Klayman, Esq.
                                               FL Bar No. 246220
                                               7050 W Palmetto Park Road, Unit 15-287
                                               Boca Raton, Florida 33433
                                               Telephone:  (310) 595-0800
                                               E-mail:  leklayman@gmail.com

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION AND SUMMARY

The Plaintiff hereby respectfully requests that the Court deny Defendants' Motion for Summary Judgment because the Defendants are not entitled to judgment as a matter of law. Defendants have not filed a separate statement of undisputed material facts in support of their request for summary judgment, as required by Federal Rule of Civil Procedure ("FRCP") 56(c), and thus *at the outset* the motion is procedurally and substantially defective. Defendants simultaneously filed both a Motion for Summary Judgment under FRCP Rule 56 and also a Motion to Dismiss under FRCP Rule 12(b)(6) and Rule 12(b)(1). Separately, the Plaintiff responds also to the Defendant's Motion to Dismiss.

Here, the Plaintiff responds in opposition to the Defendants' Motion for Summary Judgment. However, because the Defendants' Motion to Dismiss cannot be sustained on the facts or law, neither can the Defendants' Motion for Summary Judgment prevail.  To avoid duplication and repetition, the Plaintiff refers to and incorporates by reference as if set forth herein key sections of Plaintiff's Motion for Summary Judgment and Plaintiff's Opposition to Motion to Dismiss, filed concurrently herewith, as well as Plaintiff's own Motion for Summary Judgment, filed on February 3, 2016 [Dkt # 8].

On January 4, 2016, the Executive Office of the President (informally "The White House") announced President Obama's series of unilateral executive orders and actions as an initiative that Obama titled, "New Executive Actions to Reduce Gun Violence and Make Our Communities Safer" (hereinafter "new gun control executive orders" or Defendants' "initiative").  Now, under these executive orders, almost anyone can be a "dealer" – even being entirely unaware of that status suddenly applying to them.

The Defendants have rewritten laws concerning the right to buy or sell or be a dealer in firearms so as to burden and abridge Plaintiff's fundamental rights under the Second Amendment to the U.S. Constitution.  Under the new gun control executive orders, the Plaintiff could be designated as a "dealer" and subjected to firearm regulation with criminal penalties.  These actions are unconstitutional, illegal under the Administrative Procedures Act, 5 U.S.C. §§ 551-559, and *ultra vires*.  These actions are unconstitutional abuses of the executive branch's role in our nation's constitutional architecture and exceed the powers of the President as set forth in the U.S. Constitution.

A core dispute is that the Defendants cynically label a fundamental transformation of the law as merely administrative "guidance" in order to avoid the substantive and procedural requirements of the Administrative Procedure Act ("APA").  Labels that the Defendants use for public relations and marketing purposes are not controlling or worthy of any consideration.

The Defendants contend in their Memorandum of Law in Support of Motion to Dismiss and Motion for Summary Judgment, and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Memorandum"), March 28, 2016, page 1, that: "[r]ather, the Guidance merely provides the public with a plain English summary of when the relevant statutory scheme deems an individual to be a firearms "dealer" such that he or she must obtain a Federal Firearms License."

However, the definition of "dealer" determines whether a person will either be a criminal or not a criminal.  As discussed below, if one buying or selling a gun for a private collection now suddenly qualifies as a "dealer" but does not obtain a license, her or she may be indicted, tried, and ultimately go to prison.  If he or she does not conduct background checks with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), he or she can be prosecuted and convicted as a felon.

Also, before January 4, 2016, a citizen could only lose his or her Second Amendment rights upon **formal adjudication** by a competent court, consistent with due process of mental incapacity, now the National Instant Criminal Background Check System ("NICS") will deny those rights for ill-defined, inaccurate, frivolous, or even retaliatory claims.  Any information about the Plaintiff entered into NICS without any due process can now deprive him of his constitutional rights.

## II.     GOVERNING STANDARD OF LAW

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in FRCP Rule 56(a), which states, in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FRCP Rule 56 states, in relevant part, that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." *Id.* Summary judgment is appropriate when the moving party demonstrates it is entitled to judgment as a matter of law. *Id.; Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

A summary judgment motion will be denied if a dispute about a "material" fact is "genuine."  The Court must decide if the assertion that a factual dispute exists is genuine or a dispute that is not significant to the result.  A case must proceed to trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986).

Generally, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Id.* at 243. Evidence may be presented in the form of pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. *Id.* at 247.

The moving party bears the heavy burden of meeting these standards. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986). "The moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp., v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Furthermore, FRCP Rule 56(d) also states:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>    (1) defer considering the motion or deny it;
>    (2) allow time to obtain affidavits or declarations or to take discovery; or
>    (3) issue any other appropriate order.

*Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861, 275 U.S. App. D.C. 37 (D.C. Cir. 1989); *Londrigan v. FBI*, 670 F.2d 1164, 1174, 216 U.S. App. D.C. 345 (D.C. Cir. 1981). "Summary judgment is proper only "after adequate time for discovery . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he purpose of Rule 56(d) is to prevent railroading the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, 2003 U.S. Dist. LEXIS 11791, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citing *Celotex Corp. v. Catrett*, at 317).

## III.   **ARGUMENT**

### A.  **Plaintiff has Standing to Bring this Challenge**

A plaintiff has standing if (1) he has suffered an injury in fact, (2) the injury in fact is caused by action of Defendant, and (3) the injury is redressable. *See Lujan v. Defs. Of Wildlife,*

504 U.S. 555 (1992). Plaintiff has clearly met this threshold requirement as a owner of "two 9 millimeter handguns and one .45 caliber" who is subject to Defendants' new regulations. (SUMF ¶ 20). Crucially, Defendants' new gun control executive orders transform the definition of who qualifies as a "dealer" to the extent that Plaintiff's status may shift from being a "non-dealer" to a "dealer". As a non-dealer, Plaintiff was previously able to sell and transport his firearms without having to conduct a background check and refuse to sell to individuals who did not pass the background check. However, should Plaintiff's status shift to that of a "dealer" he suddenly must obtain a dealer license, conduct background checks, and refuse to sell to individuals who do not pass a background check, or risk committing a felony punishable by up to five years' imprisonment and fines up to $250,000. Moreover, Plaintiff has met the prudential standing requirements for claims under the APA because "the interest sought to be protected by the complainant [is] arguably within the zone of interests to be protected or regulated by the statute ... in question." *Texas v. United States*, 86 F. Supp. 3d 591, 615 (S.D. Tex. 2015). There is a strong favorable presumption in favor of the Plaintiff. *Id*. Not only have Defendants not proffered any facts to rebut Plaintiff's standing, Plaintiff's interest is clearly within the zone of interests to be regulated, as an individual whose status as a "non-dealer" has been called into doubt.

## 1.  Plaintiff Has Suffered a Cognizable Injury in Fact

As described in the foregoing paragraph[1], Plaintiff has suffered a cognizable injury in fact because a shift from non-dealer to dealer status would severely restrict Plaintiff's ability to buy, sell and transport his firearms and subject Plaintiff to criminal liability for actions that were previously legal. Being subject to criminal prosecution and imprisonment is clearly a cognizable

---

[1] *supra* section III(A)

injury in fact. Moreover, Plaintiff's injury is immediate, by Defendants' own admission. Defendants admit that their new gun control executive orders took effect "immediately" on January 4 or 5, 2016.[2]

### 2. Plaintiff Alleged that the Injury was Directly and Proximately Caused by Defendants

Plaintiff's cognizable injury in fact is directly caused by Defendants' new executive orders. Without such executive orders, Plaintiff would certainly remain a "non-dealer" who is free to buy, sell and transport his firearms without the looming threat of criminal prosecution.

### 3. Plaintiff's Injury is Redressable

Striking or ruling invalid the Defendants' new gun control executive orders would restore the *status quo ante* and relieve the Plaintiff of the legal jeopardy they created and the infringement of his fundamental constitutional rights.

### B. Defendants Change the Law by Changing Definition of "Dealer" in Violation of Procedural Requirements of the APA

The Defendant's Memorandum, Section II(B), Page 2 also argues that summary judgment should be granted because the Plaintiff cannot establish that their new gun control executive orders are regulatory changes subject to the APA rather than merely being administrative "guidance." However, merely disingenuously labeling a regulation as a "guidance" does not confer Defendants the right to ignore the formal rule making process. "…[T]wo criteria to distinguish policy statements from substantive rules: whether the rule (1) "impose[s] any rights and obligations" and (2) "genuinely leaves the agency and its decisionmakers free to exercise discretion." *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. Tex. 2015) "There is some

---

[2] *Press Briefing, Press Secretary to President Obama Josh Earnest,* January 5, 2016, accessible at: https://www.whitehouse.gov/the-press-office/2016/01/05/press-briefing-presssecretary-josh-earnest-152016.

overlap in the analysis of those prongs "because '[i]f a statement denies the decisionmaker discretion in the area of its coverage . . . then the statement is binding, and creates rights or obligations.'" *Id*. "While mindful but suspicious of the agency's own characterization, we . . . focus[] primarily on whether the rule has binding effect on agency discretion or severely restricts it." *Id*. "[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." "A binding rule is not required to undergo notice and comment if it is one 'of agency organization, procedure, or practice.'….'[T]he substantial impact test is the primary means by which [we] look beyond the label 'procedural' to determine whether a rule is of the type Congress thought appropriate for public participation…. An agency rule that modifies substantive rights and interests can only be nominally procedural, and the exemption for such rules of agency procedure cannot apply." *Id*. at 176.Thus, the inquiry must be made into the substance of the regulation, not the mere label that is is given.[3] Moreover, the issuance of a guideline or guidance may constitute final agency. *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000). "Guidance" document constitutes final agency action reviewable under Section 704 insofar as it restrains administrative staff 's discretion.  *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755-56 (5th Cir. 2011) ; *NRDC v. EPA*, 643 F.3d 311, 319-20 (D.C. Cir. 2011).

### 1. Defendants have substantively changed the rights of Plaintiff, and numerous others, by changing the definition of the term "dealer"

Here, Defendants have substantively changed the rights of Plaintiff, and numerous other

---

[3] Courts reject the proposition that an agency can escape judicial review under the APA, 5 U.S.C. § 704, by merely labeling its rule an "informal" guidance document. *See Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir. 1986)).  The primary distinction between a substantive rule and a general statement of policy . . . turns on whether an agency intends to bind itself to a particular legal position.  *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997); *American Bus Ass'n v. United States*, 627 F.2d 525, 532 (D.C. Cir. 1980).

Americans, by illegally changing the definition of what constitutes a "dealer". As described above, "dealers" are subject to much stricter requirements when buying, selling, or transporting firearms and face criminal prosecution for failing to meet those requirements. As such, Defendants' new gun control executive orders "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979).  The changing definition of who is a "dealer" causes some people who were acting lawfully before the change to be guilty of criminal felonies after the change.  Because the Defendants' changes burden U.S. citizens with possible criminal prosecution, conviction, and imprisonment who were not previously breaking any law, the changes are regulatory changes that must comply with both the procedural requirements of the APA and the substantive requirements of the APA (must be authorized under the underlying legislation and sustainable under the constitution).

Secondly, the Defendants' new gun control executive orders are *ultra vires* and illegal legislative rules which require compliance with the APA because they are binding on ATF officials. A rule is substantive (and hence must comply with the APA) "if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *General Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted). An agency directive must comply with the APA, when, for example, "[F]rom beginning to end [it] reads like a ukase [i.e., edict in Russian].  It commands, it requires, it orders, it dictates." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000).   The Defendants' new executive orders are subjected to judicial review because it used "mandatory words like 'will' instead of permissive words like 'may'.  *See Cohen v. United States*, 578 F.3d 1, 7 (D.C. Cir. 2009). Defendants here have ordered ATF personnel to apply a new and different interpretation of who is a "dealer." The Defendants ordered the ATF in its enforcement of the laws entrusted to that agency for

enforcement to treat almost anyone as a dealer, regardless of whether or not the person is in the

business of trading in firearms or earning a livelihood (or seeking to) by trading in firearms.

Third, the new gun control executive orders are legislative rules because each order "puts

a stamp of agency approval or disapproval on a given type of behavior," as analyzed by

*Chamber of Commerce v. DOL*, 174 F.3d 206, 212 (D.C. Cir. 1999).

### 2. Defendants' own statements indicate that they intended to, and have changed the law

The Press Secretary of the Executive Office of the President, Josh Earnest, authorized to

speak publicly on behalf of the Defendants as their agent, admitted on January 5, 2016, that the

orders effecting and implementing the <u>change in the law</u> has not yet been publicly released:

> MR. EARNEST: "I'm not sure what sort of administrative paperwork is required
> to implement the policy that the President discussed today, but we can certainly
> consult with Counsel's Office here and get back to you with an answer on that."[4]

Mr. Earnest clearly indicates that Defendants plan to "implement the policy that the

President discussed today". If, in actuality, as Defendants argue, the ATF Guidance and the

White House Fact Sheet merely serve as guidance, and not legislation, there would be nothing to

implement. Additionally, in the Defendants' Memorandum, the Defendants effectively admit that

the Plaintiff's Complaint is accurate and correct, in that the Defendants have substantively

changed the laws enacted by Congress. Page 3 of Defendants' Memorandum states:

> Recognizing that "[g]un violence has taken a heartbreaking toll on too many
> communities across the country," President Obama in early January 2016
> announced a series of initiatives aimed at reducing gun violence. *See* Fact Sheet at
> 2, ECF No. 8-3.

That is, the challenged programs are intended to produce a change in society which can

only be a legislative act, specifically "reducing gun violence" "across the country."  Further:

---

[4] *Press Briefing by Press Secretary Josh Earnest* (Docket No. 8-4)

The policies announced by the President, and crafted in consultation with the Attorney General, FBI Director, and Head of the Bureau of ATF were designed "to strengthen our enforcement and prevent guns from falling into the wrong hands to make sure that criminals, people who are mentally unstable, those who could pose a danger to themselves or others are less likely to get them." THE WHITE HOUSE, *Remarks by the President on Recommendations on Gun Safety*, https://www.whitehouse.gov/the-press-office/2016/01/05/remarks-president-recommendations-gun-safety (Jan. 4, 2016).

*Id.* at page 3-4.

The Defendants' new executive orders will cause U.S. citizens to be prosecuted

("enforcement") who would not previously be prosecuted.  The programs are intended to

"prevent guns from falling into the wrong hands" so as to legislatively change the behavior of

U.S. citizens.

First, Plaintiff challenges guidance issued by ATF to help those intending to buy or sell firearms to understand when federal law requires a license. *See* ECF No. 8-5, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Do I need a License to Buy and Sell Firearms*, ATF Publication 5310.2, https://www.atf.gov/file/100871/download (Jan. 2016) ("ATF Guidance").

*Id.* at pages 3-4.

The Gun Control Act, as amended, prohibits "engag[ing] in the business of importing, manufacturing, or dealing in firearms" unless one is "a licensed importer, licensed manufacturer, or licensed dealer." 18 U.S.C. § 922(a)(1)(A). A violation of this provision is punishable by up to five years in prison. *Id.* § 924(a)(1)(C). The statutory scheme also imposes on FFLs certain duties. Licensed dealers must "verify, at the point of sale, whether a potential buyer may lawfully own a gun," *Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014), by, among other things, contacting NICS to determine whether the purchaser is qualified to own the firearm, 18 U.S.C. § 922(t)(1)(A)–(B). Dealers must also "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." *Id.* § 923(g)(1)(A).

*Id.* at page 5.

> **3. Because Defendants changed the substantive rights of Plaintiff and numerous other, by way of regulation, without abiding by the proper rule-making procedure, Defendants' action is unlawful.**

11

As a result, the Defendants must comply with the rule-making procedures imposed by the APA, including posting a precise Notice of Proposed Rule-Making in the Federal Register and receiving, reviewing, and analyzing public comments before finalizing any regulation. The APA requires this Court to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).  Procedurally, a Department or other agency cannot promulgate a rule without notice-and-comment rulemaking.  Although referred to as 'informal' rule-making, this elaborate procedure requires the agency to publish a notice of proposed rulemaking in the *Federal Register* and to accept and consider public comments on its proposal. *See* 5 U.S.C. § 553.

The agency must publish "proposed rule making" and invite public comment, then draft a final version of the regulation after considering and analyzing the public comments.   A failure to genuinely and truly analyze, consider, and evaluate the public comments before drafting the final version of the regulation may violate the APA.

## C.  Defendants' New Gun Control Executive Orders Violate Substantive APA Requirements

On Defendants' Memorandum Page 27, the Defendants claim that they are entitled to summary judgment because the Defendants' new gun control executive orders do not constitute a change to the law in conflict with the laws passed by Congress nor are they arbitrary or capricious. Pursuant to 5 U.S.C. § 706(2), the APA requires this Court to hold unlawful and set aside any agency action that is

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

The APA prohibits the agency from authorizing what Congress has prohibited or *vice*

12

*versa.  See, e.g.*, *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  The policies previous Congresses embraced in the past foreclose the agency from adopting a policy Congress rejected. *See, e.g.*, *Hearth, Patio & Barbecue Ass'n v. U.S. Dept. of Energy*, 706 F.3d 499, 504-07 (D.C. Cir. 2013).

As described in the foregoing paragraphs, Defendants' actions have constituted a change in the application of the law. By changing the definition of what constitutes a "dealer", Defendant's new executive orders are not "in accordance with" the laws enacted by Congress. 5 U.S.C. § 706(2)(a).  Furthermore, a regulation that burdens a fundamental right must satisfy "strict scrutiny" and be narrowly tailored to further a compelling state interest, as discussed above.  Defendants' orders take away legal rights for millions of would-be gun owners.

### D.  Defendants' New Gun Control Executive Orders Exceed the Scope of Executive Authority

In Defendants' Memorandum beginning on Page 28, Defendants contend that none of the initiatives challenged here exceeds the Executive's Authority. The crux of Defendants' argument here appears to be that the ATF did not serve as "legislation", but instead was just a "guidance". As described in the previous paragraphs of this opposition, this contention has no merit. Defendants have indeed altered the substantive rights of Plaintiff and numerous other individuals by shifting the definition of "dealer" so as to impose restrictions on the purchase, sale, and transport of firearms on those previously not subject to regulation. This is clearly rule-making and not merely "guidance".

Moreover, Defendants contend that Plaintiff's claim that Defendant's overstepped the bounds of Executive Authority with the SSA rule is without merit because no rule has yet been promulgated. While it is true that the SSA rule has not been promulgated as of yet, the substance

13

of the announcement indicated that "[t]he Social Security Administration will begin the rulemaking process to include information in the background check system about beneficiaries who are prohibited from possessing a firearm for mental health reasons."[5] As such, the clear result of such rule would be to preclude a whole new subset of individuals from purchasing firearms legally.

Under 27 C.F.R. 478.32, implementing Title I, State Firearms Control Assistance (18 U.S.C. Chapter 44), of the Gun Control Act of 1968 (82 Stat. 1213), as amended, a person is denied the right to buy a firearm (a dealer may not sell to them) who has been ***formally adjudicated by a competent court*** to be…."a mental defective or has been committed to a mental institution." Reports from the judicial branch as to who has been convicted of a felony or adjudicated mentally incompetent, etc., are entered into NICS, which is managed by the Federal Bureau of Investigations (FBI).  28 C.F.R. 25. Now, the Executive has effectively mandated that the SSA's determination of "mental health reasons" be implemented in the determination of who qualifies to legally purchase a firearm. This invariably takes the determination out of the hands of the courts, which implicates individuals' due process rights as well various other constitutional concerns, such as privacy.

### E.  New Gun Control Executive Orders Are Subjective and Void for Vagueness

The Defendants also ask for summary judgment on the grounds that the Plaintiff cannot prove a claim that their changes of the law are void for vagueness.  Defendants' Memorandum page 30.  However, the Defendants have already admitted that their new gun control executive orders are vague, subjective, and ill-defined in a way that qualifies as impermissibly vague.

---

[5] *Fact Sheet: New Executive Actions to Reduce Gun Violence and Make Our Communities Safer* (Docket No. 8-3).

These are admissions by a party opponent.[6]

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.  Second, ... vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 109 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

As the Defendants admit, their new executive orders are subjective.  They expose the

Plaintiff to potential criminal prosecution upon unfettered discretion for acts that a reasonable

person may not understand to be forbidden.  The Defendants concede in Defendants

Memorandum, page 7:

> The Guidance explains that place of business is not dispositive in determining who is a dealer. ATF Guidance 3. In fact, the Guidance notes, under extant federal law, there is no "bright-line rule for when a federal firearms license is required." *Id.* At 4. Consequently, just as place of business cannot be the end of the inquiry, "there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." *Id.* The Guidance stresses instead that the analysis is more fact bound, adding: "As a general rule, you will need a license if you repetitively buy and sell firearms with the principal motive of making a profit. In contrast, if you only make occasional sales of firearms from your personal collection, you do not need to be licensed." *Id.* (emphasis omitted).

As the Defendants also admit in their new regulatory orders:

**What activities require a dealer's license?**

Federal law does not establish a "bright-line" rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement.  Instead, determining whether you are "engaged in the business" of dealing in firearms requires looking at the specific facts and

---

[6] Fed. R. Evid. Rule  801(d)(2).

circumstances of your activities.[7]

And:

It is important to note that no single factor is determinative, and that the relative importance of any of the factors will vary depending on the facts and circumstances applicable to the individual seller.[8]

The Supreme Court makes clear that the Defendants new executive orders are void:

[O]ur holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. *L. Cohen Grocery Co.*, 255 U.S., at 89, 41 S.Ct. 298. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"—even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati*, 402 U.S. 611,  91 S.Ct. 1686 (1971).

*Johnson v. United States*, 135 S. Ct. 2551, 2561, 192 L. Ed. 2d 569 (June 26, 2015).

The same case also rejected the view that prior court precedents are sufficient:

This Court has acknowledged that the failure of "persistent efforts ... to establish a standard" ***can provide evidence of vagueness***. *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921). Here, this Court's repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy.

## F.  Declaratory Judgment:  Violation of Non-Delegation Doctrine

The Defendants are not entitled to judgment as a matter of law under the Take Care

Clause, Defendants' Memorandum, page 31, which is judicially enforceable against presidential

invocations of the dispensing power. See, e.g., *Angelus Milling Co. v. Comm'r of Internal*

*Revenue*, 325 U.S. 293, 296 (1945).   In *Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1838),

---

[7] ATF Publication 5310.2 (January 2016), Guidance to help you understand when a Federal Firearms License is required under federal law. U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, page 4, accessible at: https://www.atf.gov/file/100871/download
[8] *Id.*

the Court affirmed mandamus to a cabinet official ordering him to settle claims with mail contractors as required by an act of Congress. The cabinet official argued that he could ignore the act because the President had an exclusive duty to execute the laws, *id.* at 545-47, 612.  The Court disagreed.  *Id.* at 613; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter.").

### G.  Violation of President's Duty to Take Care that Laws Are Executed

The Take Care Clause is judicially enforceable against presidential invocations of the dispensing power. See, e.g., *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945).   For example, in *Kendall v. United States*, 37 U.S. (12 Pet.) 524 (1838), the Court affirmed mandamus to a cabinet official ordering him to settle claims with mail contractors as required by an act of Congress. The cabinet official argued that he could ignore the act because the President had an exclusive duty to execute the laws, *id.* at 545-47, 612.  The Court disagreed: "To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the [C]onstitution and entirely inadmissible." *Id.* at 613; *see also Medellin v. Texas*, 552 U.S. 491, 525 (2008) (President has "an array" of discretionary obligations to enforce international law, "but unilaterally converting a non-self-executing treaty into a self-executing one is not among them"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter."); *Angelus Milling Co. v.*

*Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945) ("[E]xplicit statutory requirements . . .

must be observed and are beyond the dispensing power of Treasury officials.").

## IV.     <u>CONCLUSION</u>

Based on the foregoing reasons, Plaintiff respectfully requests that the Court deny the

Defendants' motion for summary judgment.

Dated: April 27, 2016                              Respectfully submitted,

                                                   */s/ Larry Klayman*
                                                   Larry Klayman, Esq.
                                                   FL Bar No. 246220
                                                   7050 W Palmetto Park Road, Unit 15-287
                                                   Boca Raton, Florida 33433
                                                   Telephone:  (310) 595-0800
                                                   E-mail:  leklayman@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this April 27, 2016 a true and correct copy of the foregoing Plaintiff's Opposition to the Defendants' Motion for Summary Judgment was filed with the Court through the Court's Electronic Case Filing system, and will be delivered electronically to all counsel for the Defendants who have entered an appearance in this case through the ECF system, including:

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch

BAILEY W. HEAPS (CA Bar No. 295870)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-1280
Facsimile: (202) 616-8470
Bailey.W.Heaps@usdoj.gov
*Counsel for Defendants*

WIFREDO A. FERRER
U.S. Attorney for the Southern District of Florida

Mr. Anthony Erickson Pogorzelski, Esq.
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9296
Fax: (305) 530-7139
Email: anthony.pogorzelski@usdoj.gov

*/s/ Larry Klayman*
Larry Klayman, Esq.

19