# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:16-CV-80087-MIDDLEBROOKS/BRANNON

LARRY KLAYMAN,

    Plaintiff,

v.

BARACK OBAMA, President; THOMAS E.
BRANDON, Deputy Director of the U.S.
Department of Justice, Head of the Bureau of
Alcohol, Tobacco and Firearms; LORETTA
LYNCH, U.S. Attorney General; and THE
UNITED STATES OF AMERICA,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (DE 18).[1] Because Plaintiff does not have standing to challenge the President's gun control initiatives announced in January 2016, I dismiss the Complaint for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiff Larry Klayman filed a Complaint challenging a series of initiatives by President Barack Obama to reduce gun violence. According to Plaintiff, "[o]n January 4 and 5, 2016, the White House ('Executive Office of the President') announced President Obama's series of orders and actions as an initiative which the White House titled: New Executive Actions to Reduce Gun

---

[1] Plaintiff filed a response in opposition (DE 25), to which Defendants replied (DE 29).

Violence and Make Our Communities Safer." (Compl. ¶ 27). A Fact Sheet was released by the White House on January 4, 2016, outlining the initiatives. (*Id.* at n.3).[2]

Plaintiff contends these "orders and actions" were not simply guidance, but rather a change in the gun laws. Plaintiff contends that the President exceeded his authority by amending the gun laws in two ways: (1) expanding the definition of a "dealer" by ordering the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to treat almost anyone who buys or sells guns as a firearms dealer, requiring a license (*id.* at ¶¶ 53-62); and (2) expanding the mental health prohibition on buying firearms by ordering the Social Security Administration to report to ATF all persons receiving disability payments to be included in the National Instant Criminal Background Check System ("NICS")[3] (*id.* at ¶¶ 63-75).[4]

Plaintiff filed this suit on January 18, 2016, against the United States, the President, the Attorney General, and the Head of ATF. Plaintiff's Complaint alleges seven counts challenging the President's authority to undertake these initiatives and contending that the initiatives violate the

---

[2] Plaintiff filed this Fact Sheet as an exhibit to his Motion for Summary Judgment. (DE 8-4, Office of the Press Secretary, The White House FACT SHEET: New Executive Actions to Reduce Gun Violence and Make Our Communities Safer, January 4, 2016, accessible at: https://www.whitehouse.gov/the-press-office/2016/01/04/fact-sheet-new-executive-actions-reduce-gun-violence-and-make-our ("Fact Sheet")).

[3] Klayman describes the system as "NISC" throughout his Complaint.

[4] In his Complaint, Klayman also contends that the President appropriated funds, without constitutional authority, to research gun technology to prevent "unauthorized use," which "could enable to government, perhaps under a future president, to remotely disable all firearms owned by the people." (*Id.* at ¶ 76). According to Klayman, "[a]n ability to prevent 'unauthorized use' (which would require a computer chip inside the firearm) could allow a tyrannical government to remotely turn off all the firearms in the country so equipped." (*Id.* at ¶ 77). However, in response to Defendants' Motion to Dismiss for lack of standing, Klayman does not address this initiative, or more specifically how he has standing to raise for any claim for relief based on this initiative. Thus, Klayman has abandoned any claim based on this initiative.

2

Administrative Procedures Act ("APA"). He brings four counts for declaratory judgment, seeking the following declarations: (1) "Defendants' new gun control rules initiative are unconstitutional as violating the role of the President of the United States and exceeding the President's constitutional authority under the U.S. Constitution" (*id.* at ¶ 85); (2) "the new gun control rules are unconstitutional as void for vagueness" (*id.* at ¶ 132); (3) "Defendants may not restrict the rights to Americans to keep and bear arms based upon vaguely-defined mental health 'issues' rather than a judicial adjudication with full due process of metal incompetency" (*id.* at ¶ 137); and (4) "Defendants' attempted exercise of delegated authority is unlawful as being in violation of the non-delegation doctrine" (*id.* at ¶ 140). Plaintiff brings two counts under the APA, alleging violations of 5 U.S.C. § 553 and §§ 702-706 (*id.* at ¶¶ 99, 121). Plaintiff's final count is that the ATF Guidance violates the President's duty under the Take Care Clause of the Constitution (*id.* at ¶ 145). In his prayer for relief, Plaintiff requests both a preliminary and a permanent injunction.

On February 3, 2016 – less than two and a half weeks after filing the Complaint – Plaintiff filed a Motion for Summary Judgment. (DE 8). On March 28, 2016, Defendants filed their Motion to Dismiss, and in the Alternative, Cross Motion for Summary Judgment. (DE 18). The Motions are fully briefed. Because I conclude that Plaintiff does not have standing to bring this action, I lack jurisdiction to resolve the cross motions for summary judgment.

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) raises the issue of subject matter jurisdiction. Federal courts are of limited jurisdiction and are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Article III of the Constitution confines the "judicial Power" of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts "have always taken

this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).

A "'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." *Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A plaintiff "must satisfy three requirements to have standing under Article III of the Constitution: (1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Beyond the constitutional requirements, the federal judiciary also adheres to a set of prudential principles that bear on the question of standing. Thus, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In addition, "federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687

4

(1973)). Therefore, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Id.* at 474-75.

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *See Lujan*, 504 U.S. at 561. On a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing. *Id.* However, when standing is raised at the summary judgment stage, the plaintiff can no longer rest on "mere allegations." *Id.* Instead, the plaintiff must "'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.*

## DISCUSSION

Defendants argue that Plaintiff lacks Article III standing to challenge the gun control initiatives cited in the Complaint because he had not alleged an injury-in-fact. Plaintiff essentially contends that he could be prosecuted as a result of these initiatives and thus has standing to sue for declaratory relief, as well as under the APA. In support, Plaintiff cites to allegations that he is a gun owner – owning at least three guns – and that he owns them for "self defense." (Compl. ¶ 8). He also suggests he owns one of the guns as a "prized collector's item." (*Id.*). He alleges that because of his work suing terrorist organizations and the Clintons, he has faced death threats and "needs the protections of the Second Amendment." (*Id.*). He alleges he intends to keep buying, selling, trading, and gifting guns. (*Id.* at ¶ 9). He alleges he is "at legal risk" because his intended conduct of buying and selling guns would become prohibited under "the Defendants' re-interpretation of the law,

subjecting the Plaintiff to legal action by the Defendants." (*Id.* at ¶ 10). He also contends that, "[g]iven [his] prominence . . . in challenging the status quo in government and in particular the Obama administration, such legal action is likely by these Defendants." (*Id.*).[5]

**ATF Guidance.** Plaintiff first challenges the President's direction to ATF to issue guidance about who must have a firearm dealer's license under federal law, as well as the ATF Guidance.[6] Pursuant to the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, codified at 18 U.S.C. §§ 921 *et seq.*, federal law requires that those who deal in firearms be licensed by ATF. The Gun Control Act, as amended, prohibits "engag[ing] in the business of importing, manufacturing, or dealing in firearms" unless one is "a licensed importer, licensed manufacturer, or licensed dealer." 18 U.S.C. § 922(a)(1)(A). A violation of this provision is punishable by up to five years in prison. *Id.* § 924(a)(1)(C).[7]

The statute defines "dealer" as:

(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting

---

[5] Although the issue of standing was raised in Defendants' Motion to Dismiss, Plaintiff has already filed a Motion for Summary Judgment. At this stage, Plaintiff may not rest on "mere allegations" to demonstrate standing, but must instead provide evidence to establish standing. Plaintiff, however, continues to rest on his allegations to establish standing, and does not provide any evidence in the form of affidavit or otherwise. Nevertheless, as Plaintiff's allegations fail to allege an injury, his Complaint must be dismissed for lack of subject matter jurisdiction.

[6] Plaintiff filed the ATF Guidance as an exhibit to his Motion for Summary Judgment. (DE 8-5, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Do I need a License to Buy and Sell Firearms*, ATF Publication 5310.2, https://www.atf.gov/file/100871/download (Jan. 2016) ("ATF Guidance")).

[7] Licensed dealers have certain duties, which include "verify[ing], at the point of sale, whether a potential buyer may lawfully own a gun," *Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014), by, *inter alia*, contacting NICS to determine whether the purchaser is qualified to own the firearm, 18 U.S.C. § 922(t)(1)(A)–(B). Dealers must also "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." *Id.* § 923(g)(1)(A).

6

special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker.

*Id.* § 921(a)(11). The Firearm Owners' Protection Act, Pub. L. No. 99-308, § 101, 100 Stat. 449, 450 (1986) sets forth that one who is "engaged in the business of selling firearms," as used in the definition of "dealer," encompasses "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C). Excluded, however, are "person[s] who make[] occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell[] all or part of [their] personal collection of firearms." *Id.*

The ATF Guidance challenged by Plaintiff is entitled, "Do I need a License to Buy and Sell Firearms?" (DE 8-5, "ATF Guidance").[8] The Guidance explains that there is no "bright-line rule for when a federal firearms license is required." *Id.* at 4. It also explains "there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." *Id.* "As a general rule, you will need a license if you repetitively buy and sell firearms with the principal motive of making a profit. In contrast, if you only make occasional sales of firearms from your personal collection, you do not need to be licensed." *Id.* (emphasis omitted). The Guidance also provides that "[f]ederal courts have identified several factors that can help you determine on what side of that line your activities fall." *Id.* The factors listed are "whether you represent yourself as a dealer in firearms; whether you are repetitively

---

[8] The Guidance provides: "The guidance set forth herein has no regulatory effect and is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding, *see United States v. Caceres*, 440 U.S. 741 (1979)." ATF Guidance at ii.

7

buying and selling firearms; the circumstances under which you are selling firearms; and whether you are looking to make a profit." *Id.*

Defendants argue that Plaintiff lacks standing to challenge the ATF Guidance because he fails to allege an injury-in-fact. Specifically, they contend he does not allege that he is affected by the Guidance because he has not alleged he is a dealer or he intends to act as a dealer.

Plaintiff responds that his injury is an increased risk of prosecution and that is sufficient to confer standing. To demonstrate an injury-in-fact for pre-enforcement challenges to criminal prohibitions, a plaintiff must "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Even assuming for the purpose of this Motion that the ATF Guidance regulates constitutionally-protected conduct by requiring a dealer obtain a license, Plaintiff does not allege that he intends to engage in conduct requiring a license, as described in the Guidance. He does not allege he holds himself out as a firearms dealer or that he intends to "repetitively buy and sell firearms with the principal motive of making a profit." AFT Guidance at 1 ("As a general rule, you will need a license if you repetitively buy and sell firearms with the principal motive of making a profit. In contrast, if you only make occasional sales of firearms from your personal collection, you do not need to be licensed."). Instead, Plaintiff alleges he intends to sell or acquire firearms for the purpose of collecting and self-defense, which is not proscribed by the ATF Guidance.

According to Plaintiff:

Defendants' Executive Orders expressly state that a person can be found to be a dealer when "only one or two transactions took place.[] Defendants concede that "Plaintiff has alleged that he intends to 'buy, sell, trade, or gift these guns or

8

additional guns. . . ." By applying the definition of "dealer" set forth in Defendants' Executive Orders, Plaintiff absolutely could be categorized as such, and as a result, be subject to imprisonment and fines for the exact conduct that would have been deemed legal prior to Defendants' Executive Orders.

(DE 25 at 13). Plaintiff's fear of prosecution appears to be based on the following in the AFT Guidance: "Note that while quantity and frequency of sales are relevant indicators, courts have upheld convictions for dealing without a license when as few as two firearms were sold, or when only one or two transactions took place, when other factors were also present." ATF Guidance at 1. However, Plaintiff ignores the "other factors" listed in the AFT Guidance, which include "whether you represent yourself as a dealer in firearms; whether you are repetitively buying and selling firearms; the circumstances under which you are selling firearms; and whether you are looking to make a profit." *Id.* Thus, Plaintiff's alleged fear is based on an incomplete reading of the ATF Guidance.

Moreover, because Plaintiff has pointed to no "past enforcement against the same conduct," *Susan B. Anthony List*, 134 S. Ct. at 2345, he cannot claim a credible threat of prosecution based on the ATF Guidance. Accordingly, Plaintiff does not have Article III standing to challenge the ATF Guidance.[9]

**Social Security Administration Rule.** Another initiative Plaintiff challenges concerns the President's announcement that the Social Security Administration "has indicated that it will begin the rulemaking process to include information in the [NICS] background check system about beneficiaries who are prohibited from possessing a firearm for mental health reasons." Fact Sheet

---

[9] Because an injury-in-fact is required for all of Plaintiff's claims, including procedural APA claims, Plaintiff lacks Article III standing to challenge the ATF Guidance. *Sierra Club v. Johnson*, 436 F.3d 1269, 1277-78 (11th Cir. 2006) ("determining whether a plaintiff can enforce a procedural right requires determining whether he has suffered a concrete injury as a result of the claimed procedural error or omission.").

at 10. Plaintiff fails to allege, must less provide any evidence indicating, he would be affected by any potential rule involving the reporting of persons receiving Social Security disability with a mental health condition to NICS. He does not allege he suffers from a mental health condition or that he receives Social Security disability. Thus, he does not allege facts indicating he has suffered, or will likely suffer, an injury-in-fact as a result of any future SSA rule. Without an injury-in-fact, Plaintiff lacks Article III standing to proceed on any of his claims.

## CONCLUSION

For reasons stated above, Plaintiff fails to demonstrate, through his allegations or any evidence, that he has standing to bring this action. Thus, this Court lacks subject matter jurisdiction over this case. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (DE 18) is **GRANTED**. Plaintiff's Complaint (DE 1) is **DISMISSED**. The Clerk of Court shall **CLOSE** this case and **DENY** all pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 16 day of June, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record